# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

Nº 05 Civ. 5298 (RJS)

_____

NICHOLAS SCARANGELLA,

Plaintiff,

VERSUS

GROUP HEALTH INC. and SCARANGELLA & SONS, INC. d/b/a/ Village Fuel, as Administrator of the Village Fuel Employee Benefits Plan,

Defendants.

_____

AMENDED OPINION AND ORDER
March 24, 2009

_____

RICHARD J. SULLIVAN, District Judge:

Plaintiff Nicholas Scarangella brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that his wife was wrongfully denied benefits under the terms of an employee benefits plan that was insured by Defendant Group Health Inc. ("GHI"), and administered by Plaintiff's employer, Defendant Scarangella & Sons, doing business as Village Fuel ("Village Fuel"). GHI brings counterclaims under ERISA for restitution, as well as rescission and reformation of its insurance contract with Village Fuel. GHI also brings three similar crossclaims against Village Fuel for restitution, rescission, and reformation. Finally, Village Fuel brings a crossclaim against GHI for breach of fiduciary duty under ERISA.

Before the Court are motions for summary judgment by GHI and Village Fuel. For the

reasons set forth below, GHI's motion is denied, Village Fuel's motion is granted in part and denied in part, and the Court enters partial summary judgment in favor of Plaintiff, *sua sponte*.

I. BACKGROUND[1]

A. Facts

Village Fuel is a Long Island heating and plumbing services company, which was created in 1949 by Plaintiff's father. (O'Mahony Decl. Ex. A, Pl.'s Interrog. Resp. 5.) Village Fuel is named as a party in its capacity as the administrator of the Village Fuel Employee Benefits Plan (the "Village Fuel Plan"). Patrick Scarangella is Plaintiff's brother and the President of Village Fuel. (*Id.*)

In the spring of 2002, Village Fuel entered into a contract with GHI (the "GHI Contract" or "Contract"), which provided for health insurance coverage as part of the Village Fuel Plan. On June 1, 2002, Plaintiff enrolled in the health insurance coverage program of the Village Fuel Plan, as provided for under the terms of the GHI Contract.

Plaintiff received health insurance coverage from GHI for approximately two years. However, on July 19, 2004, GHI notified Village Fuel that it was retroactively terminating the GHI Contract because of

alleged inaccuracies in the documents submitted in support of Village Fuel's initial application for health insurance coverage. Specifically, GHI asserted that Village Fuel falsely represented that Plaintiff was eligible for coverage as a "Full-Time Employee," as that term is defined in the GHI Contract. This litigation centers around the parties' efforts to determine their rights and liabilities following GHI's notice of termination of the GHI Contract.

1. Village Fuel's Application For Insurance Coverage

On April 24, 2002, Village Fuel submitted a "Small Employer Group Application Form" to GHI, seeking healthcare benefits for its employees. (GHI 56.1 ¶ 1.) Village Fuel indicated on the application that its employees became "eligible for health coverage" under the Village Fuel Plan after three months of employment, and that it had eleven eligible employees at the time of the application. (*Id.* ¶¶ 3-4, 8.) Village Fuel also attached to the application a document entitled "Quarterly Tax Combined Withholding, Wage Reporting and Unemployment Insurance" (a "NYS-45 Form"), which identified eleven employees who were on Village Fuel's payroll during the first quarter of 2002, *i.e.*, the period between January 1, 2002 and March 31, 2002. (*Id.* ¶ 4.)

The NYS-45 Form submitted by Village Fuel in connection with its application indicated that an employee named "Scarangella[,] V[ito]" was employed by Village Fuel and had received $450 in wages during that quarter. (*Id.* ¶ 5.) The same form indicated that an employee named "Scarangella[,] N[icholas]" was employed by

---

[1] The facts described below are taken from the parties' Local Rule 56.1 Statements, the affidavits submitted in connection with the motions, and the exhibits attached thereto. Where only one party's Rule 56.1 Statement is cited, the opposing parties do not dispute that fact or have not presented admissible evidence to controvert that fact.

Village Fuel and had also received $450 in wages during the same period. (*Id.* ¶¶ 6, 7.)

Patrick Scarangella signed the application form on behalf of Village Fuel in his capacity as Village Fuel's President. (Brand Aff. Ex. A-2 at GHI 1303.) The following text appears above his signature: "The information provided in this application is true to the best of my knowledge. I hereby authorize any person, organization or other entity to release to GHI any information requested by GHI in connection with the processing of its application." (*Id.*)

In a May 17, 2002 letter to GHI that was written on Village Fuel letterhead, Patrick Scarangella supplemented Village Fuel's application by representing that he and Plaintiff "were employed with Village Fuel prior to the dates of actual hire. . . . in a part time capacity and not on the payroll." (*Id.* at GHI 1335.)

### 2. The GHI Contract

Based on Village Fuel's application, GHI issued to Village Fuel the GHI Contract. (GHI 56.1 ¶ 14.) The full title of the document was "Group Contract For Community-Rated Small Groups," and the Contract became effective on June 1, 2002. (*Id.*) The GHI Contract named Village Fuel as the policyholder and stated that "[o]nly eligible Full-Time Employees and their spouses and eligible dependents, may be covered under this Contract." (*Id.* ¶ 25.)

Under the terms of the Contract, Village Fuel agreed to "provide GHI complete and accurate records of each Subscriber and his or her dependents," and to "notify GHI of any changes in enrollment, such as termination of

employment . . . ." (*Id.* ¶ 28.) The Contract also required that "[a]ll such records and accounts shall be available at all times for audit and inspection by GHI." (*Id.* ¶ 29.)

In order to be eligible for health insurance coverage under the Contract, an applicant was required to be a "Full-Time Employee" of Village Fuel. (Diaz Aff. Ex. A at GHI 663.) The Contract defined "Full-Time" as "actively work[ing] twenty (20) hours per week or more." (*Id.* at GHI 660.) The Contract's definition of "Employee" adopted the definition of that term used by the Internal Revenue Service. (*Id.*) Additionally, in order to be eligible for coverage under the GHI Contract, an "Employee" had to have been working at Village Fuel for at least three months prior to the time he or she applied for enrollment. (GHI 56.1 ¶ 3.)

As to GHI's obligations, the Contract stated that:

> GHI shall provide health benefits for a person after [Village Fuel] advises GHI that such person is a [person] eligible for coverage under the Contract. GHI or [Village Fuel] may later find such person is not eligible under this Contract. [Village Fuel] shall then reimburse GHI for the amount of the Provider charges actually paid by GHI on behalf of the person. [Village Fuel] shall immediately terminate the person who is not eligible.

(Diaz Aff. Ex. A at GHI 666.) In regard to GHI's provision of insurance benefits payments, the Contract stated that "[a]ll benefits provided [by GHI] under this Contract shall be paid to or on behalf of the [Employee]

as they accrue." (*Id.* at GHI 672.) GHI reserved the right to, "at its option, pay benefits directly to the Provider rendering services. Any such payment shall completely discharge GHI's liability with respect to the amount so paid." (*Id.*)

The Contract also provided that "GHI reserves the right to immediately terminate the coverage of any person who is found by GHI not to be eligible under this Contract." (GHI 56.1 ¶¶ 15-16.) The Contract described several additional potential grounds for termination. (*See* Diaz Aff. Ex. A at GHI 671.) One such provision reserved GHI's right to "terminate this Contract immediately upon written notice if the Policyholder has performed an act or practice that constitutes fraud or has made an intentional misrepresentation of a material fact under the terms of the Contract." (*Id.*)

### 3. The Insurance Certificate

After enrolling in the health insurance coverage provided by GHI as part of the Village Fuel Plan, Village Fuel employees were provided with a "Certificate of Health Insurance" from GHI (the "Insurance Certificate" or "Certificate"). (GHI 56.1 ¶ 34; *see also* Diaz Aff. Ex. C.) The Insurance Certificate stated that, pursuant to the GHI Contract, "GHI will provide the benefits described in this booklet to covered persons." (Diaz Aff. Ex. C at 1.)

The Certificate described in detail the types of medical services covered by the GHI Contract, and stated that "[i]n order to request benefits, you must file a claim with GHI." (*Id.* at 2.) It also described the process by which GHI would determine whether a healthcare service was covered by the GHI Contract, and

set forth deadlines by which claimants would be required to provide additional information to support their benefits claims, if necessary. (*Id.* at 3-4.)

Section nineteen of the Insurance Certificate was entitled: "Filing of Claims and Appeals." (*Id.* at 33.) The section began by indicating that "[c]laims will usually be filed directly with GHI by Hospitals and Participating Providers. All Claims must be filed within the time limits set forth below." (*Id.*) The Certificate also instructed that "[i]n order to receive benefits, you must promptly complete and file your claim form . . . . within eighteen (18) months of the date upon which a service has been rendered." (*Id.* at 34.)

Under a subheading in the same section entitled "Grievances," the Certificate stated that "[i]f you do not agree with a decision made by GHI . . . , you may file a grievance with GHI. . . . You must file the grievance within one hundred and eighty (180) days from the date that you received notice of GHI's decision." (*Id.*) In addition to the process for filing grievances with GHI, the Certificate also described both an "internal" appeal process for seeking review of coverage decisions within GHI, and an "external" appeal process in which, under some circumstances, GHI's decisions could be reviewed by New York State's Department of Insurance. (*Id.* at 34-37.)

Finally, the Insurance Certificate contained provisions regarding termination of coverage that were similar to those in the GHI Contract. (*See id.* at 38.) Specifically, the Certificate stated that coverage "will terminate" if, *inter alia*: (1) the subscriber to the insurance policy "engage[s] in fraud or intentionally make[s]

-4-

untrue statements on any forms related to [his or her] coverage under this policy," or (2) the "Contract between [Village Fuel] and GHI terminates." (*Id.* at 38.)

### 4. Plaintiff's Application For Enrollment In GHI's Insurance Coverage

Although the document is undated, Plaintiff submitted an application for enrollment in the health insurance coverage provided by the Village Fuel Plan under the terms of the GHI Contract (the "enrollment application"). (GHI 56.1 ¶ 11.)   The application stated that Plaintiff's address was "6410 River Run Blvd., Spring Hill, FL 34607." (Brand Aff. Ex. A-2 at GHI 1323.) The enrollment application was signed by Plaintiff and authorized by Patrick Scarangella, who signed the document on behalf of Village Fuel. (*Id.*) The back of the enrollment application stated that "[a]ny person who knowingly and with intent to defraud any insurance company . . . files an application for insurance or statement of claim concerning any materially false information . . . commits a fraudulent insurance act, which is a crime . . . ." (*Id.* at GHI 1324.)

Plaintiff's enrollment application indicated that his employment at Village Fuel began on June 1, 2001, and listed Plaintiff's wife — Carolyn Scarangella — as a dependent "to be covered" by the Village Fuel Plan. (*Id.* at GHI 1323.) Plaintiff's enrollment application was approved by GHI, after which his coverage for hospital treatment became effective on June 1, 2002 and his broader medical coverage became effective on August 1, 2002. (*Id.*)

Plaintiff received one of the aforementioned Insurance Certificates, *see supra* Section I.A.3, which contained the terms

described above. (Pl.'s 56.1 ¶ 34; *see also* Diaz Aff. Ex. C.) In December 2003, Village Fuel again certified that Plaintiff was eligible for insurance coverage under the terms of the GHI Contract.   (Village Fuel 56.1 ¶ 33.) Plaintiff and his wife received health insurance coverage until GHI terminated the Contract with Village Fuel on July 19, 2004.

### 5. GHI's Inquiry Regarding Plaintiff's Eligibility For Benefits

On June 24, 2004, GHI mailed Plaintiff a letter stating that it was "reviewing the membership of [Village Fuel] for compliance with GHI Group Guidelines." (GHI 56.1 ¶ 35.) The letter requested that Plaintiff provide payroll and tax documents from the previous three years, as well as a notarized letter from Village Fuel verifying Plaintiff's job description, the dates of his employment, his hours at the job, and his salary. (Brand Aff. Ex. A-1 at GHI 1298.)

On July 6, 2004, apparently in response to GHI's letter to Plaintiff, Village Fuel submitted a series of state and federal tax documents relating to Plaintiff's employment between January 1, 2002 and March 31, 2004. (*Id.* Ex. A-5.)   The forms supplied by Village Fuel provided an incorrect Social Security Number for Plaintiff. (GHI 56.1 ¶¶ 39, 42.) There were also discrepancies between the NYS-45 Form submitted in July 2004 that purported to cover the first quarter of 2002, and the NYS-45 Form covering the same period that was initially submitted by Village Fuel in connection with its April 24, 2002 application. Specifically, the NYS-45 Form that was submitted in 2002 stated that Plaintiff and Vito Scarangella each earned $450.00 during that quarter. (Brand Aff. Ex. A-2 at GHI 1315.) However, the

NYS-45 Form relating to the same period that was submitted by Village Fuel in July 2004 did not list either Plaintiff or Vito Scarangella as employees. (*Id.* Ex. A-5 at GHI 1574.)

6.  GHI's Termination of toh he Contract

On June 18, 2004, Geraldine Brand, an investigator in GHI's "Special Programs Investigations Unit," was assigned to review Plaintiff's eligibility for benefits. (O'Mahony Decl. Ex. C at GHI 1200.) On June 24, 2004, GHI submitted a complaint form regarding Plaintiff to the Frauds Bureau of the New York State Insurance Department. (*Id.* at GHI 1194.) The form was signed by Brand and stated that "[e]ligibility of subscriber is questionable. Sub[scriber] lives in Florida but is listed on tax documents as an employee at a New York business." (*Id.*) Brand identified both Plaintiff and Village Fuel in the complaint form as "parties to the suspect transaction." (*Id.*)

In a letter dated July 19, 2004 that was addressed to Patrick Scarangella at Village Fuel, GHI "terminat[ed] health insurance coverage for [Village Fuel]," effective June 1, 2002. (Brand Aff. Ex. A-1 at GHI 1223; *see also* GHI 56.1 ¶ 50.) The letter explained that the termination was based on "discovery of passed [sic] ineligible group activity. In 2002 your group failed to properly comply with the established Underwriting guidelines for members of your group." (Brand Aff. Ex. A-1 at GHI 1223.) The letter stated further that, "[u]nder the circumstances, GHI will not offer any continuation of coverage or conversion plans to past group affiliates or dependents. This affects all subsequent claim submissions irrespective of date of service as well as claims payments made to ineligible persons." (*Id.*)

On July 20, 2004, Village Fuel's accountant, Steven Boccio, called Brand regarding GHI's July 19 letter to GHI. (Village Fuel 56.1 ¶ 6.) Brand explained GHI's reasons for terminating Village Fuel's benefits, and Boccio requested additional copies of the documents that were attached to Village Fuel's July 6, 2004 letter. (*See* Brand Aff. Ex. A-1 at GHI 1211.)

In a phone call on July 21, 2004, Boccio told Brand that he was responsible for the error regarding Plaintiff's Social Security Number, but he then provided Brand with a third Social Security Number that did not match the number that appeared on either of the NYS-45 Forms that had been previously submitted. (*Id.*) Boccio and Brand then called Plaintiff together via conference call, and Plaintiff provided a Social Security Number that matched the number provided on the documents that were submitted by Village Fuel in 2002. (*Id.*) However, when asked by Brand, Plaintiff refused to explain the other discrepancies in the NYS-45 Forms regarding when and whether he was actually employed by Village Fuel in the First Quarter of 2002. (*Id.*)

On July 21, 2004, James C. Roca, an insurance agent who assisted Village Fuel in the preparation of its April 24, 2002 application to GHI, called GHI and spoke to Brand. (*Id.*) Roca apparently "conceded" that the discrepancies on the different NYS-45 Forms regarding the various Social Security Numbers and the wages received by Plaintiff during the first quarter of 2002 were "odd," and he indicated that he "would have questioned" these submissions. (*Id.*)

Finally, on July 22, 2004, an attorney named Joel Silkowitz wrote to GHI on behalf of Village Fuel in order "to respond to [GHI's] July 19, 2004 fax with a retroactive notice of cancellation of more than two years." (*Id.* at GHI 1212.) The letter asserted that GHI's termination was "shocking based on the dates involved and coupled with the fact that [GHI had] received and cashed premiums through June 2004." (*Id.*) Silkowitz stated that GHI's decision would be "vigorously opposed based upon the above along with the fact that you have offered no valid explanation for your act." (*Id.*)

According to an entry by Brand in the database of GHI's Special Programs Investigations Unit, the investigation was "sent to legal" — presumably the legal department of GHI — in July 2004. (*Id.* at GHI 1207.) The database entry also states that, as of September 30, 2004, GHI was "in litigation," that coverage for both Plaintiff and Village Fuel had been terminated effective June 1, 2002, and that "[n]o demand is being requested from [Village Fuel]." (*Id.*)

On May 23, 2006, Brand wrote a letter to the Frauds Bureau of the New York State Insurance Department, which stated that "[b]ased upon our review, we have closed this case with no further action." (*Id.* at GHI 1208.)

7.   GHI's Benefits Determinations

The record contains a series of "Explanation Of Benefits" ("EOB") Forms indicating adverse benefits determinations by GHI, which were mailed to Plaintiff at his Spring Hill, Florida address. (*See, e.g.*, Bernstein Reply Decl. Ex. A.) Plaintiff admits that he "received EOB Forms for some of the claims denied by GHI . . . ." (Pl.'s 56.1 ¶ 66.)

The first EOB Form in the record is dated July 20, 2004, one day after GHI retroactively terminated the Contract with Village Fuel. (Bernstein Reply Decl. Ex. A at 1). The last EOB Form in the record is dated April 29, 2005. (Brand Aff. Ex. B.) Collectively, the EOB Forms refer to services provided to Plaintiff and his wife between late-February 2004 and January 2005. (*See* Bernstein Reply Decl. Ex. A.)

All of the EOB Forms listed the "Subscriber" as "Scarangella Nicholas S," and included the name of the person or entity who provided the medical services for which coverage was sought (the "Provider"). (*See, e.g.*, Brand Aff. Ex. B.) The EOB Forms stated that "[t]he information provided below is to advise you of your contract's determination of medical benefits." (*Id.*)

Each EOB Form indicated that GHI declined to provide a specific "benefit payment" to the Provider named on the form, and listed a "Note" explaining the reason or reasons for its decision. (*Id.*) For example, in an EOB Form dated July 20, 2004, GHI provided two reasons for denying services that were provided to Plaintiff's wife on May 3, 2004: (1) "[o]ur records show that your coverage ended prior to the date of service. Therefore, no payment can be made on this claim"; and (2) "[t]hese services were rendered after coverage was terminated." (*Id.*) In the EOB Forms in the record, GHI relied almost exclusively on one, or both, of these reasons as the explanation for denying Plaintiff benefits.

The back of each EOB Form provided information on Plaintiff's rights under the GHI Contract to file an inquiry or grievance regarding GHI's decision. (*See, e.g., id.* Ex. B at 2.) According to the EOB Forms, Plaintiff was entitled to "file a written grievance with GHI within 180 days of this notice." (*Id.*)

The EOB Form also described "additional rights for ERISA Plan participants and beneficiaries." Specifically, the form stated that a "participant or beneficiary" of an ERISA-covered Plan: (1) "ha[d] the right to receive a copy of the internal rule, guidelines, or protocol or other criteria that GHI used to make its determination upon request and free of charge"; and (2) "may have the right to bring a civil action under Section 502(a) of [ERISA] . . . ." (*Id.*) The form also directed its recipients that, "[i]f you are not sure whether your health benefit plan is an ERISA plan, please contact your employer and/or your plan sponsor." (*Id.*)

## B. Procedural History

Following its July 19, 2004 letter to Village Fuel retroactively terminating the GHI Contract, GHI commenced an action against Village Fuel in the New York State Supreme Court, New York County on August 6, 2004 (the "state court action"). In the state court action, GHI sought equitable rescission of the insurance policy that it had issued to Village Fuel, and recovery of the value of the benefits it paid under the Plan. On October 14, 2004, Village Fuel filed a responsive pleading in the state court action, and a trial was scheduled to begin on April 28, 2005.

However, on March 22, 2005, Village Fuel removed the state court action to the Southern District of New York under the caption *Group Health Inc. v. Village Fuel, Inc.*, No. 05 Civ. 3093 (KMK) (S.D.N.Y. Mar. 22, 2005) (the "removed action"). The removed action was assigned to the Honorable Kenneth M. Karas, District Judge. On April 28, 2005, GHI filed a motion to remand the removed action to the New York Supreme Court.

On June 3, 2005, while GHI's remand motion was pending before Judge Karas in the removed action, Plaintiff commenced the instant action, which was also assigned to Judge Karas. On July 25, 2005, the removed action was designated as related to this matter.

Following the commencement of this action, the parties agreed to a joint dismissal of the removed action. On August 5, 2005, in the removed action, Judge Karas noted the parties' agreement and denied as moot GHI's motion to remand. Subsequently, on August 15, 2005, the parties stipulated to the dismissal of the removed action pursuant to Rule 41(a)(1)(ii), and Judge Karas ordered that the case be dismissed.

After the removed action was dismissed, on August 30, 2005, GHI filed its Answer in this matter, which contained three counterclaims against Plaintiff and three similar crossclaims against Village Fuel. ("GHI Answer" (Doc. No. 11).) On September 1 and 19, 2005, respectively, Plaintiff and Village Fuel filed responsive pleadings in connection with GHI's claims. (Doc. Nos. 12, 13.) In that pleading, Village Fuel also filed a crossclaim against GHI ("Village Fuel Answer" (Doc. No. 14).)

This case was reassigned to the undersigned on September 4, 2007. Following discovery, on December 3, 2007, GHI filed a

motion for summary judgment. (Doc. No. 42.) Plaintiff and Village Fuel filed separate sets of opposition papers to GHI's motion on January 21, 2008, and Village Fuel also filed a motion for summary judgment on the same day. (Doc. Nos. 57, 60, 61.) GHI filed its reply papers on February 19, 2008 (Doc. Nos. 74-77), and Village Fuel filed a sur-reply on March 17, 2008 (Doc. Nos. 85-86).

By Order dated February 13, 2009, the Court notified the parties that it was contemplating entering summary judgment in Plaintiff's favor, *sua sponte*, on GHI's counterclaim for restitution. (Doc. No. 91.) On February 23, 2009, GHI submitted a Supplemental Memorandum in response to the Court's Order. ("GHI Supp. Mem." (Doc. No. 92).)

## II. SUMMARY JUDGMENT

In a motion under Rule 56, the moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). Pursuant to Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Matican v. City of New York*, 524 F.3d 151, 154 (2d Cir. 2008).

"A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Guilbert v. Gardner*, 480 F.3d

140, 145 (2d Cir. 2007)); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "Where the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Global Aerospace, Inc. v. Hartford Fire Ins. Co.*, No. 06 Civ. 7104 (LAK), 2009 WL 89122, at *5 (S.D.N.Y. Jan. 13, 2009).

"District courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*." *First Fin. Ins. Co. v. AllState Interior Demolition Corp.*, 193 F.3d 109, 114 (2d Cir. 1999); *see also Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991). "However, this is true only 'so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.'" *First Fin. Ins.*, 193 F.3d at 114 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)).

## III. DISCUSSION

GHI and Village Fuel have filed separate motions for summary judgment. GHI moves for summary judgment on the claims against it, as well as its counterclaims and crossclaims. Village Fuel cross-moves for summary judgment on GHI's claims and its crossclaim. For the reasons set forth below, GHI's motion is denied, Village Fuel's motion is granted in part and denied in part, and the Court enters summary judgment in Plaintiff's favor, *sua sponte*, on GHI's counterclaim for restitution.

### A. Plaintiff's Claims

Plaintiff alleges that GHI wrongfully refused to pay for the cost of medical services incurred by his wife under the terms of the GHI Contract and the Village Fuel Plan. (Compl. ¶¶ 14-16.) He brings causes of action against GHI and Village Fuel under ERISA's section 502(a), 29 U.S.C. § 1132(a), and seeks the value of the benefits that he alleges were wrongfully denied by GHI after it terminated the GHI Contract on July 19, 2004. (*Id.* ¶¶ 18-20.)

GHI moves for summary judgment on Plaintiff's claims, arguing that Plaintiff did not exhaust his administrative remedies prior to commencing this action, and that, in any event, its termination decision was consistent with the terms of the GHI Contract and the Insurance Certificate. For the reasons stated below, GHI's motion is denied because there are disputed issues of material fact with respect to both of GHI's arguments.

### 1. Applicable Law

### i. Exhaustion of Administrative Remedies Under ERISA

"ERISA requires that when an application for benefits has been denied, there be an opportunity for review by the plan administrator." *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 140 (2d Cir. 2000) (citing 29 U.S.C. § 1133). In addition to the statutory requirement that an ERISA plan provide for appellate review of the administrator's benefits determinations, there is also "a 'firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" *Paese v. Hartford Life*

*Accident Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006) (quoting *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993)). This policy has developed, *inter alia*, in order to provide a "sufficiently clear record of administrative action if litigation should ensue," and to "assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard . . . ." *Kennedy*, 989 F.2d at 594.

Thus, "[i]t is well settled that timely exhaustion of plan remedies is a prerequisite to suit in federal court and that, absent appropriate equitable considerations, court action is barred absent such exhaustion." *Sanfilippo v. Provident Life & Cas. Ins. Co.*, 178 F. Supp. 2d 450, 458 (S.D.N.Y. 2002). This requirement is not jurisdictional; rather, the failure to exhaust administrative remedies may be raised as an affirmative defense by a defendant in an action bought by a plan beneficiary under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). *Paese*, 449 F.3d at 446.

However, regulations promulgated by the Department of Labor ("DOL") provide that a plaintiff "shall be *deemed to have exhausted* the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) . . . [if] the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(l) (emphasis added). "The 'deemed exhausted' provision was plainly designed to give claimants faced with inadequate claims procedures a fast track into court . . . ." *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 222 (2d Cir. 2006). The regulations require, *inter alia*, "timely benefit determinations, written or electronic

explanation of adverse determinations, and the opportunity for appeal." *Id.* at 221 n.7 (quoting 29 C.F.R. § 2560.503-1(f), (g), (h)). The Second Circuit has "reject[ed] the idea that [a] small measure of conformity to the regulatory requirements [of the 'deemed exhausted' regulations] . . . can block or delay a plaintiff's right to sue." *Id.* at 223 (citing *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 107 (2d Cir. 2005)).

### ii. Judicial Review of Benefits Determinations Under ERISA's Section 502(a)(1)(B)

In a claim under section 502(a)(1)(B) of ERISA, if the plaintiff has exhausted his or her administrative remedies, then the court must review the challenged adverse benefits determination. "Principles of trust law require courts to review a denial of plan benefits 'under a *de novo* standard' unless the plan provides to the contrary." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies, since 'the party claiming deferential review should prove the predicate that justifies it.'" *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999) (quoting *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir. 1995)). "[T]he language used in a benefit plan's documents must include a clear reservation of discretion to the plan administrator in order to avoid a *de novo* review of the administrator's determination." *O'Sullivan v. Prudential Ins. Co. of Am.*, No. 00 Civ. 7915 (KNF), 2001 WL 727033, at *2 (S.D.N.Y. June 28, 2001) (citing *Kinstler*, 181 F.3d at 245).

### 2. Analysis

Plaintiff brings his claims under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). (*See* Compl. ¶ 19.)[2] Thus, the Court addresses GHI's arguments regarding Plaintiff's failure to appeal the termination of his benefits, as well as the substance of GHI's termination decision.

First, although Plaintiff did not pursue an appeal of GHI's decision to terminate his health insurance coverage, the Court concludes that there are disputed issues of material fact with respect to whether Plaintiff should be deemed to have exhausted his administrative remedies under the DOL regulations. Second, the Court concludes that it must review *de novo* GHI's July 19, 2004 decision to retroactively terminate Village Fuel's coverage under the GHI Contract, which apparently included an implied termination of Plaintiff's health insurance. Third, conducting that review, the Court finds that there are disputed factual issues regarding the propriety of GHI's termination decision. Accordingly, GHI's motion for summary judgment is denied.

---

[2] To the extent Plaintiff's causes of action are based on state law, they are preempted by ERISA and hereby dismissed as to both GHI and Village Fuel. *See, e.g., Turcotte v. Blue Cross & Blue Shield of Mass., Inc.*, No. 07 Civ. 4023 (RJS), 2008 WL 4615903, at *9 & n.1 (S.D.N.Y. Oct. 14, 2008) (citing *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008)). Likewise, although the Complaint indicates that Plaintiff seeks punitive damages, that prayer for relief is dismissed as to both Defendants because it is unavailable in an ERISA action. *Id.* (citing *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 321 (2d Cir. 2003)).

i.  Exhaustion of Administrative Remedies

"[A] failure to exhaust ERISA administrative remedies is . . . an affirmative defense." *Paese*, 449 F.3d at 446. Thus, in addition to the burden of demonstrating that there are no disputed issues of material fact with respect to its motion for summary judgment, GHI also bears the burden of proving that this defense is applicable because Plaintiff failed to exhaust his administrative remedies.  GHI has not met these burdens on the basis of the record presently before the Court.  Specifically, there are disputed factual issues with respect to whether Plaintiff's administrative remedies should be "deemed exhausted" under the DOL regulations.

Although GHI purported to terminate all of Village Fuel's health insurance coverage under the Contract by a July 19, 2004 letter to Village Fuel, the only notice in the record to Plaintiff of any adverse benefits determinations came from GHI's EOB Forms. (Brand Aff. Ex. A-1 at GHI 1223.)  Under the DOL regulations, GHI was required to provide Plaintiff with notice "of the plan's adverse benefit determination within a reasonable period of time, but not later than 30 days after receipt of the claim." 29 C.F.R. § 2560.503-1(f)(iii)(B). However, the first EOB Form in the record is dated July 20, 2004, one day after GHI's retroactive termination letter to Village Fuel.  Moreover, nearly all of the EOB Forms indicate that they were issued more than thirty days *after* the medical services referenced on the forms were provided. (*See, e.g.*, Bernstein Reply Decl. Ex. C at 1.)

The dates on these documents support competing inferences that cannot be resolved on summary judgment.  GHI asserts that it provided Plaintiff with notice of each adverse benefits determination within thirty days of receiving the relevant bill from the medical services provider listed on each respective EOB Form.  (*See* Bernstein Reply Decl. Ex. A.)  Building on that contention, GHI further asserts that the dates on the EOB Forms therefore do not *establish* that the Forms were untimely because the DOL regulation require that notice of the benefits determination be given "not later than 30 days after *receipt of the claim*" by GHI from the medical services provider.  29 C.F.R. § 2560.503-1(f)(iii)(B) (emphasis added).  However, that argument, which suggests that Plaintiff must establish that the EOB Forms were untimely under the "deemed exhausted" regulation, misstates the evidentiary burden with respect to this affirmative defense raised by GHI.  Moreover, the fact that the EOB Forms are all dated *after* GHI terminated coverage, coupled with the time periods between the dates the medical services were provided and the dates of the respective EOB Forms, suggests that GHI's adverse benefits determinations were untimely. Absent admissible evidence regarding the dates on which GHI received bills from the medical service providers listed on the EOB Forms, a disputed issue of material fact exists with respect to the Forms' timeliness under the DOL regulations.

The DOL regulations also required GHI to include in its adverse benefits determinations a "[r]eference to the specific plan provisions on which the determination is based." *Id.* § 2560.503-1(g)(ii).   The EOB Forms are deficient in this respect as well.  It was insufficient for GHI to state, for example, that "[t]hese services were offered after coverage was terminated."  (Brand Aff. Ex. B.) "Substantial compliance" with the DOL

regulations is not enough; close adherence to these provisions is required. *See Eastman Kodak*, 452 F.3d at 222 (citing *Nichols*, 406 F.3d at 107). The explanations in the EOB Forms do not reference any provisions of the GHI Contract or the Insurance Certificate. Thus, the EOB Forms do not comply with this aspect of the DOL regulations.

Therefore, at minimum, there are disputed factual issues regarding whether the notices of adverse benefits determinations that GHI provided to Plaintiff complied with the DOL regulations for timeliness and content. *See* 29 C.F.R. § 2560.503(1)(f)(iii)(B), (g)(ii); *see also id.* § 2560.503(1)(h)(1) ("Every employee benefit plan shall establish and maintain a procedure by which . . . there will be a full and fair review of the claim and the adverse benefit determination."). Accordingly, because there are factual disputes regarding the applicability of the DOL's "deemed exhausted" regulations, summary judgment is inappropriate on the basis of GHI's affirmative defense relating to the exhaustion argument.

### ii. Judicial Review of GHI's Benefits Determinations

GHI next argues that its decision to terminate Plaintiff's benefits should be reviewed under the "arbitrary and capricious" standard, and that the basis for the termination is supported by substantial evidence. (GHI Mem. at 6.) In support of its argument for deferential review, GHI cites to the following language from the GHI Contract: "GHI reserves the right to immediately terminate the coverage of any person who is found by GHI not to be eligible under this Contract." (Diaz Aff. Ex. A at GHI 663.) Although this language gave GHI the ability to terminate

coverage, that authority was only to be exercised in connection with the objective eligibility criteria in the Contract — that is, a minimum of twenty hours worked per week and three months' prior employment at Village Fuel — for defining whether a person qualified as a "Full-Time Employee."

"In general, language that establishes an objective standard does not reserve discretion . . . ." *Nichols*, 406 F.3d at 108 (citing *Kinstler*, 181 F.3d at 251). The fact that GHI "reserve[d] the right to develop *other* criteria to determine whether persons qualify as 'Employees'" is of no moment. (Diaz Aff. Ex. A at GHI 660 (emphasis added).) There is no evidence in the record that GHI developed any such "other" criteria, or that it applied anything but the objective standards described in the Contract to reach its decision that Plaintiff was not eligible for benefits. Moreover, to the extent there is ambiguity in these provisions regarding whether GHI possessed sufficient discretion to justify deferential review, it must be construed against GHI. *See Nichols*, 406 F.3d at 108. Therefore, GHI's authority to determine the applicability of the objective criteria in the Contract did not confer sufficient discretion on GHI to trigger deferential review of its decision to terminate Plaintiff's benefits. Accordingly, GHI has not demonstrated that it is entitled to deferential review, and the Court reviews *de novo* its adverse benefits determination regarding Plaintiff.

Turning to the adverse benefits determination at issue, GHI argues that Plaintiff was only permitted to enroll for health insurance on the basis of misrepresentations in the initial application documents, and that Plaintiff was not, in fact, eligible for coverage under the terms of the GHI Contract in June

2002. Specifically, GHI asserts that when Village Fuel certified that Plaintiff was a "Full-Time Employee" under the GHI Contract, it made two misrepresentations: (1) that Plaintiff had worked for Village Fuel for at least three months prior to the time of his enrollment application, and (2) that Plaintiff was working at least twenty hours per week at the time of his application. (GHI Mem. at 5, 11-13.)

The primary basis for GHI's argument is the discrepancies between the NYS-45 Forms that Village Fuel submitted to GHI on April 24, 2002, and the different NYS-45 Forms purporting to cover the same period that Village Fuel submitted in July 2004. (*Id.* at 18-19.) The NYS-45 Forms submitted to GHI in 2002 indicated that Plaintiff was a Village Fuel employee who earned $450 during the first quarter of 2002. (*Id.*) In 2004, Village Fuel submitted a NYS-45 Form that did not list Plaintiff as an employee. Based mainly on this difference, GHI argues that "[t]hese documents demonstrate that . . . plaintiff clearly was not employed by Village Fuel during the three month period preceding his enrollment and was ineligible [for coverage] at that time." (*Id.*) However, this proof is not as conclusive of a misrepresentation as GHI would suggest. Applying the *de novo* standard, there are factual disputes with respect to Defendants' contentions that preclude summary judgment.

GHI argues that the NYS-45 Forms submitted by Village Fuel in 2004 are particularly probative of whether Plaintiff was a "Full-Time Employee" of Village Fuel in June 2002 because those were the forms that were actually filed with the New York State Department of Taxation. (*Id.* at 5, 19.) Specifically, GHI presents the tripartite argument that: (1) the NYS-45 Form covering

the first quarter of 2002 that was submitted by Village Fuel in 2004 was the form that was actually *filed* with the New York State Department of Taxation And Finance; (2) the NYS-45 Form that was actually filed by Village Fuel does not list Plaintiff as an employee; and, therefore (3) because Village Fuel did not represent to New York State that Plaintiff was an employee for tax purposes, Plaintiff, in fact, was not a "Full-Time Employee" under the GHI Contract.

GHI is not entitled to summary judgment on the basis of this argument. Specifically, GHI has provided little, if any, proof to support its bare assertion that the NYS-45 Form submitted to it in 2004 was the form that was actually filed by Village Fuel in 2002. For example, the Reply Declaration submitted by Michael H. Bernstein purports to append "true and correct copies of the tax record transcripts from the New York State Department of Taxation And Finance." (Bernstein Reply Decl. ¶ 5 & Ex. C.) However, the attached documents are unlabeled computer printouts containing hearsay, and they are unaccompanied by any sort of certification from New York State regarding their authenticity. Therefore, these documents are insufficient to establish which NYS-45 Form was actually filed by Village Fuel.

Moreover, there is evidence in the record that Plaintiff worked for Village Fuel for more than three months prior to his application for insurance coverage and that he worked at least twenty hours per week as a Village Fuel employee. This evidence directly conflicts with GHI's determination that Plaintiff was not a "Full-Time Employee" under the Contract in 2002 and precludes summary judgment in GHI's favor.

-14-

At his deposition, Plaintiff estimated that he worked for Village Fuel for between twenty-five and thirty-five hours per week while he was in Florida between 2002 and 2004. (O'Mahony Decl. Ex. A ("Pl.'s Dep.") at 110:16-20.) With respect to his job duties, Plaintiff stated that he performed paperwork for Village Fuel, which was either mailed to him by Village Fuel from Long Island or personally delivered to him in Florida by Vito Scarangella. (Id. at 111:8-14.) In terms of compensation, Plaintiff testified that he received a weekly cash payment of $130, that Village Fuel paid the premiums for his health insurance coverage under the GHI Plan, and that he occasionally received additional unspecified cash bonus payments from Village Fuel. (Id. at 73:24-74:4, 74:24-25, 75:7-13.)[3]

In his interrogatory responses, Plaintiff stated that he was "more of a businessman," and that, while working for Village Fuel from Florida between 2002 and 2004, he performed tasks such as "sourcing, estimating, . . . quality control, [and] guard[ing] against internal loss from dishonest employees . . . ." (O'Mahony Decl. Ex. A, Pl.'s Interrog. Resp. 5; see also Pl.'s Dep. at 39:16- 40:19.) He also stated that "[d]uring the period in question," Patrick Scarangella "regularly shipped invoices and receipts from plumbing jobs to [Plaintiff] in Florida" in order to allow Plaintiff to "review the paperwork and comment." (O'Mahony Decl. Ex. A, Pl.'s Interrog. Resp. 5.) Finally, Plaintiff indicated that, in addition to his other duties, when visiting New York he sometimes "worked as much as a full-time day assisting crews with the installation or repair of plumbing fixtures." (Id.)

Therefore, notwithstanding GHI's contentions regarding the NYS-45 Forms, Plaintiff has adduced admissible evidence tending to suggest that he was employed by Village Fuel in June 2002 and worked approximately twenty-hours per week. Thus, the record contains disputed factual issues as to whether Plaintiff was a "Full-Time Employee" under the GHI Contract at the time he applied for and received insurance coverage. Accordingly, reviewing de novo GHI's decision to retroactively terminate Plaintiff's health insurance, GHI's motion for summary judgment on Plaintiff's claims against it is denied.

### B. GHI's Claims

Pursuant to section 502(a)(3)(B) of ERISA, 29 U.S.C. § 1132(a)(3)(B), GHI has pleaded three respective causes of action against both Plaintiff and Village Fuel: restitution, rescission, and reformation. In substance, GHI seeks "return of . . . $42,361.50 ($59,147.17 in benefit payments minus $16,784.67 in returned

---

[3] The record suggests that Village Fuel utilized several suspect practices with respect to its payroll management, records keeping, and tax payment practices. For example, Village Fuel's May 17, 2002 letter to GHI indicated that Plaintiff was a "part time employee," but that he was "not on the payroll." (Brand Aff. Ex. A-2 at GHI 1335.) Similarly, Plaintiff testified at his deposition that Village Fuel "don't keep records." (Pl.'s Dep. at 96:21-22.) Plaintiff also stated that Patrick Scarangella would write checks payable to Plaintiff drawn on Village Fuel's account, forge Plaintiff's signature on the checks in order to cash them, and transfer the cash to Plaintiff. (Pl.'s Dep. at 150:7-152:14.) Although Village Fuel's business practices may subject it to other forms of liability — for example, the evidence in this case suggests that there are serious questions as to whether either Village Fuel or Plaintiff paid appropriate taxes on the income they describe — those questions are not currently before the Court.

premiums) . . . ." (GHI Supp. Mem. at 4, 5 n.1; *see also* GHI Mem. at 24.)

GHI moves for summary judgment on each of its claims, and Village Fuel cross-moves for summary judgment on GHI's claims against it. Because each of these claims is brought under ERISA's section 502(a)(3), they are subject to a similar legal analysis. In light of the structure of this analysis, and because the claims are pleaded in a parallel manner, the Court separately discusses each pair of GHI's claims in turn.

### 1. GHI's Restitution Claims

GHI alleges that it provided Plaintiff with benefits to which he was not entitled, resulting in payment of "approximately $62,000 for claims submitted by plaintiff and/or his dependents." (GHI Answer ¶ 73; *see also id.* ¶ 92.) GHI asserts that Village Fuel and Plaintiff have been unjustly enriched as a result of those alleged payments, and that they "must therefore make equitable restitution of all amounts paid by GHI on behalf of plaintiff and/or his dependents, less any premiums paid by co-defendant to GHI for the Plan." (*Id.* ¶ 76; *see also id.* ¶ 95.)

For the reasons stated below, the Court concludes that the relief sought by GHI is unavailable under section 502(a)(3) of ERISA. Accordingly, with respect to GHI's restitution claims, GHI's motion is denied, Village Fuel's motion is granted, and the Court enters summary judgment in Plaintiff's favor, *sua sponte*.

### i. Applicable law

Under section 502(a)(3) of ERISA, a plan fiduciary may bring a civil action "to obtain . .

. appropriate equitable relief . . . to enforce . . . the terms of the plan." 29 U.S.C. § 1132(a)(3); *see also Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103-04 (2d Cir. 2005). However, as the statute makes clear, the relief sought must be equitable, rather than legal, in nature. *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361-62 (2006); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 253 (1993). In order to satisfy this requirement, both the nature of the claim and the "underlying remedy" must be equitable. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002).

Under ERISA, a plan fiduciary may seek equitable restitution where money belonging to the Plan can clearly be traced to particular funds or property in the beneficiary's possession. *Sereboff*, 547 U.S. at 363-64; see also *DiGiacomo v. Prudential Life Ins. Co.*, 501 F. Supp. 2d 626, 635 (D.N.J. 2007). In any such claim, however, the plan fiduciary "must seek not to impose personal liability on the [beneficiary], but to restore to the [ERISA plan] particular funds or property in the [beneficiary's] possession." *Banyai v. Mazur*, No. 00 Civ. 9806 (SHS), 2007 WL 959066, at *3 (S.D.N.Y. Mar. 29, 2007) (citing *Knudson*, 534 U.S. at 214); *see also Kellner v. First Unum Life Ins. Co.*, 589 F. Supp. 2d 291, 312-13 (S.D.N.Y. 2008); *Fehn v. Group Long Term Disability Plan for Employees of JP Morgan Chase Bank*, No. 07 Civ. 8321 (WCC), 2008 WL 2754069, at *2-4 (S.D.N.Y. June 30, 2008).

### ii. Analysis

GHI argues that it is entitled "to recover the difference between the amount of benefits it paid less the amount of premiums it received for the coverage" provided to Plaintiff. (GHI

Mem. at 24.) This type of relief, which GHI seeks from both Village Fuel and Plaintiff, cannot be characterized as equitable. *See Sereboff*, 547 U.S. at 362-63. Rather, GHI seeks, in essence, compensatory damages relating to the benefits it paid to Plaintiff, apparently from the general assets of either Plaintiff or Village Fuel.[4]

"[A]lmost invariably suits seeking 'to compel a [party] to pay a sum of money . . . are suits for money damages.'" *Nechis*, 421 F.3d at 103 (quoting *Knudson*, 534 U.S. at 213); *see also Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 391 (S.D.N.Y. 2006) (noting that where a party to an ERISA action "seeks merely to recover from the general assets of the" opposing party, "his claim is that of a general creditor and sounds in law rather than equity"). Moreover, GHI "does not identify segregated funds in [P]laintiff's possession, but merely attempts to impose a personal liability upon [P]laintiff [and Village Fuel]." *Fehn*, 2008 WL 2754069, at *2-4 (S.D.N.Y. June 30, 2008) (citing *Knudson*, 534 U.S. at 213).

Indeed, the GHI Contract states that "[p]ayments for covered services rendered by a GHI Participating Provider will be made *directly to that Provider*" (Diaz Aff. Ex. C at 46), which suggests that neither Plaintiff nor Village Fuel *ever* possessed the benefits payments GHI now weeks to recover. Thus, the relief sought cannot be characterized as equitable.

Simply put, GHI "cannot cloak a legal claim for damages in equitable clothing . . . ." *Fisher v. Penn Traffic Co.*, No. 06 Civ. 5848 (HB), 2007 WL 496657, at *5 (S.D.N.Y. Feb. 16, 2007); *see also Coan v. Kaufman*, 457 F.3d 250, 262-64 (2d Cir. 2006). Therefore, because the relief sought cannot be considered equitable, summary judgment is appropriate in favor of Plaintiff and Village Fuel.[5] Accordingly, GHI's counterclaim and crossclaim for restitution are dismissed.

---

[4] In its February 23, 2009 Supplemental Memorandum, GHI argues that "it makes no practical difference" whether the net value of the benefits paid to Plaintiff "is returned by Village Fuel on GHI's cross-claim against it for breach of its fiduciary duty . . . or by [Plaintiff] on GHI's counterclaim." (GHI Supp. Mem. at 5 n.1.) However, GHI's Answer does not contain a crossclaim for breach of fiduciary duty under section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2). Rather, as stated above, GHI has pleaded crossclaims for restitution, rescission, and reformation. (GHI Answer ¶¶ 60-76.) Nevertheless, even if GHI had brought such a crossclaim, it would not be able to directly recover the value of the benefits it paid to Plaintiff. *See Bona v. Barasch*, No. 01 Civ. 2289 (MBM), 2003 WL 1395932, at *9 (S.D.N.Y. Mar. 20, 2003) ("Unlike ERISA's other enforcement provisions, Section 502(a)(2) authorizes relief for the benefit of a plan only."); *see also infra* Section III.C.2.

[5] "[A] district court may, on an appropriate record, grant summary judgment *sua sponte* — after giving the party against which the court is contemplating such a decision notice and an opportunity to present evidence and arguments in opposition . . . ." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008). As described above, *see supra* Section I.B, on February 13, 2009, the Court provided notice to the parties that it was contemplating the entry of summary judgment against GHI on its counterclaim for restitution. (Doc. No. 91.) In its February 23, 2009 Supplemental Memorandum, GHI appears to have abandoned that claim and suggests that it did not bring an independent counterclaim against Plaintiff for restitution. However, GHI's Answer plainly includes such a counterclaim. (*See* GHI Answer at 15-16, ¶¶ 91-96 (pleading "A Third Counterclaim Against Plaintiff, Nicholas Scarangella, For Equitable Restitution").) Accordingly, because GHI failed to address the issues raised in the Court's February 13, 2009 Order, and for the additional reasons stated herein, the Court enters summary judgment, *sua sponte*, in Plaintiff's favor on GHI's restitution counterclaim.

### 2. GHI's Rescission Claims

GHI alleges that Plaintiff and Village Fuel "obtained insurance coverage . . . under the GHI Plan by means of fraud, deceit and trickery." (GHI Answer ¶ 60; *see also id.* ¶ 78.) Based on this allegation, with respect to both Plaintiff and Village Fuel, GHI seeks "an Order partially rescinding the GHI insurance coverage from its inception and determining that all GHI insurance coverage for plaintiff and his dependents under the Plan is void *ab initio*." (*Id.* ¶ 65; *see also id.* ¶ 82.) For the reasons set forth below, the Court concludes that neither GHI nor Village Fuel are entitled to summary judgment on GHI's claims for rescission of the GHI Contract.

### i. Applicable Law

ERISA does not contain a cause of action for rescission. However, "ERISA was *not* so 'carefully integrated' and 'crafted' as to preclude further judicial delineation of appropriate rights and remedies; far from barring such a process, the statute explicitly directs that courts shall undertake it." *Mass. Mut. Life Ins. Co. v. Russell*, 437 U.S. 134, 156 (1985) (Brennan, J., concurring). Thus, GHI's rescission claims are governed by federal common law, which is guided, where appropriate, by state law. *See, e.g., Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 17 (2d Cir. 1993); *Jackson v. Travelers Ins. Co.*, No. 94 Civ. 5895 (SHS), 1996 WL 350677, at *4 (S.D.N.Y. June 26, 1996).

Federal courts have long recognized, outside of ERISA, that an insurer alleging that it was fraudulently induced to provide coverage may pursue an equitable action to cancel the policy. *See Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 212 (1937) ("[A]n insurer . . . may assume the offensive by going into equity and there praying cancellation. This exception to the general rule has been allowed by the lower federal courts with impressive uniformity."); *see also U.S. ex rel. Taylor v. Gabelli*, No. 03 Civ. 8762 (PAC), 2005 WL 2978921, at *5 n.10 (S.D.N.Y. Nov. 4, 2005) (discussing rescission).

However, during the "days of the divided bench," rescission was available in both law and equity. In order for rescission to be available under ERISA's section 502(a)(3), both the claim and the relief sought must be equitable. *Sereboff*, 547 U.S. at 361-62. In *Griggs v. E.I. DuPont de Nemours & Co.*, 385 F.3d 440, 445 (4th Cir. 2004), the Fourth Circuit analyzed the circumstances under which a claim for rescission can be maintained under ERISA's section 502(a)(3), noting that "[r]escission at law is accomplished without the aid of a court. It is completed when, having grounds justifying rescission, one party to a contract notifies the other party that he intends to rescind the contract and returns that which he received under the contract." *Id.* at 446 (quoting *Acton v. J.B. Deliran Corp.*, 737 P.2d 996, 999 n. 5 (Utah 1987)). The court continued:

> Once the plaintiff has rescinded, he is entitled to recover back what he gave under the contract. If the defendant does not give it back voluntarily, the plaintiff may sue for it. . . . Thus the court in cases of rescission 'at law' does not effect the rescission and the court's only role is to get back the plaintiff's property or its value.

*Id.* (quoting Dan B. Dobbs, *Handbook on the Law of Remedies* § 4.8 at 293 (West 1973)). "An action for rescission in equity, however, 'is not a suit based upon the rescission already accomplished by the plaintiff, but a suit to have the court decree a rescission.'" *Id.* (quoting Dobbs, § 4.8 at 294).

### ii.  Analysis

GHI argues that, in order to prevail on its rescission claims, the "relevant inquiry . . . is (1) whether there was a misrepresentation in the application; and (2) whether that misrepresentation was material." (GHI Mem. at 17-18.)  Neither Plaintiff nor Village Fuel challenges that characterization of the elements of GHI's ERISA claims, and the Court assumes, for the purpose of deciding the instant motions, that GHI is correct.  Nevertheless, GHI is not entitled to summary judgment because there are disputed issues regarding both the underlying facts and the nature of these claims.

As discussed above in relation to Plaintiff's claims against GHI, there are disputed issues of fact with respect to whether misrepresentations were made to GHI regarding Plaintiff's eligibility for coverage under the GHI Contract.  *See supra* Section III.A.2.ii.  In light of this factual dispute, the Court is unable to determine whether any of the alleged misrepresentations were material. *Cf. Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 125 (2d Cir. 1997) ("Determining the materiality of false assurances like those here alleged is fact-specific and will turn on a number of factors . . . .").  Therefore, summary judgment is inappropriate because there are disputed issues of material fact with respect to

both the elements of GHI's rescission claims.

The Court is likewise unable to determine on the basis of the record before it whether GHI's rescission claims are equitable in nature, and, if so, the extent of the relief that would be appropriate.  "In equity . . . , the rescission is effected *by the decree of the equity court*." *Griggs*, 385 F.3d at 446 (internal quotation omitted) (emphasis added); *see also id.* ("An action for rescission in equity . . . [is] a suit to have the court decree a rescission.").  In its Answer, GHI seeks just such a decree when it requests "an Order partially rescinding the GHI insurance coverage . . . ." (GHI Answer ¶ 64.) Thus, as pleaded, GHI's rescission claims appear to be equitable in nature and appropriate under section 502(a)(3) of ERISA.

However, prior to the commencement of this action, GHI terminated Village Fuel's insurance coverage by letter dated July 19, 2004. (GHI 56.1 ¶ 50.)  Indeed, GHI argues in its motion papers that its *previous* decisions to terminate the Contract and Plaintiff's benefits are entitled to deferential review.  (GHI Mem. at 10.)  It is unclear why GHI would need to come before this Court to seek an order rescinding the GHI Contract — GHI has already done so itself, which is more consistent with legal rescission.  *Griggs*, 385 F.3d at 446 ("Rescission at law is . . . . completed when . . . one party to a contract notifies that other party that he intends to rescind the contract and returns that which he received under the contract.  Once the plaintiff has rescinded, he is entitled to recover back what he gave under the contract. If the defendant does not give it back voluntarily, the plaintiff may sue for it . . . ." (quoting Dobbs, § 4.8 at 293)).  Thus, GHI's unilateral termination of the Contract, followed

by resort to the legal system for additional relief in order to collect the benefits it paid, suggests that these claims are legal in nature.

Finally, even if the Court were to assume that GHI's rescission claims are equitable, and therefore appropriate under ERISA, factual disputes would preclude the Court from crafting appropriate equitable relief.  In its Answer, GHI "tender[ed] all premiums paid by [Village Fuel], on behalf of plaintiff and his dependents, together with any interest as required by law, and offers to do whatever else equity may require under the circumstances." (GHI Answer ¶ 65; *see also id.* ¶ 83.)  By doing so, GHI purports to seek restoration of the status quo prior to June 1, 2002, by returning the premiums received and seeking to recover the benefits it paid.  (GHI Supp. Mem. at 2.)[6]

However, because there are factual disputes regarding whether a misrepresentation occurred, the Court is unable to determine at this time what the "status quo" is and how to restore it.  In *Griggs*, the Fourth Circuit noted that there is some authority for the proposition "that courts of equity always required full or complete restoration of the benefits exchanged

in every case where a plaintiff sought rescission of an instrument." 385 F.3d at 446-47.  Nevertheless, the *Griggs* court also acknowledged that there is "some form of a requirement to consider the equities of the situation and apply an exception to the general rule where required." *Id.* at 448.  Indeed, "[a] court of equity is always reluctant to rescind, unless the parties can be put back in statu[s] quo.  If this cannot be done, it will give such relief only where the clearest and strongest equity imperatively demands it." *Grymes v. Sanders*, 93 U.S. 55, 62 (1876).  Therefore, unless and until the factual disputes in the record are resolved regarding whether misrepresentations occurred, the Court cannot determine what, if any, relief should be granted to the parties based on these putatively equitable claims.

In conclusion, there are disputed issues of material fact with respect to whether a misrepresentation was made to GHI, and whether any such misrepresentation was material.  In light of these factual disputes, there are also remaining questions as to the nature of GHI's rescission claims, the relief sought, and whether these claims are appropriately brought under section 502(a)(3) of ERISA.  Accordingly, GHI's motion for summary judgment on its rescission claims is denied, as is Village Fuel's motion with respect to GHI's rescission crossclaim.

### 3. GHI's Reformation Claims

GHI also seeks an "Order reforming the Group Policy issued to . . . Village Fuel so that it reflects the terms and conditions GHI would have offered . . . had [Village Fuel] accurately represented the true facts concerning plaintiff's status."  (GHI Answer ¶ 71; *see also id.* ¶ 89.)

---

[6]  The Court notes that GHI's July 19, 2004 letter to Village Fuel stated that GHI was "terminating health insurance coverage for [Village Fuel] . . . . effective June 1st 2002," which suggests that GHI terminated coverage for all Village Fuel employees, rather than just Plaintiff. (Brand Aff. Ex. A-1 at GHI 1223.) Thus, GHI's tender of only the premiums paid "on behalf of plaintiff" appears to be incomplete.  Insofar as GHI terminated coverage under the GHI Contract as to *all* Village Fuel employees in July 2004, it is unclear why it did not tender *all* premiums it received in connection with the Contract.  However, in light of the factual disputes in the record, this issue is immaterial to the resolution of the instant motions.

Specifically, GHI requests that the GHI Contract "be reformed to exclude plaintiff and his dependents from coverage under the plan." (*Id.* ¶ 72; *see also id.* ¶ 90.) For the reasons set forth below, the Court concludes that neither GHI nor Village Fuel are entitled to summary judgment with respect to these claims.

### i. Applicable Law

Similar to GHI's rescission claims, ERISA does not expressly provide for a cause of action for equitable reformation of a contract. To the extent such a claim exists under ERISA, it is also governed by the federal common law. *See, e.g.*, *Krishna*, 7 F.3d at 16.

"A mutual mistake of the parties, or . . . a mistake on plaintiff's part and a fraud by defendant are the classic grounds for reformation of an instrument *in equity*." *Koam Produce, Inc. v. DiMare Homestead, Inc.*, 213 F. Supp. 2d 314, 326 (S.D.N.Y. 2002) (quoting *Brandwein v. Provident Mut. Life Ins. Co.*, 3 N.Y.2d 491, 496 (N.Y. 1957)) (emphasis added); *see also AMEX Assurance Co. v. Caripides*, 316 F.3d 154, 161 (2nd Cir. 2003) ("[R]eformation is available in cases of fraud and mutual mistake."); *Fresh Del Monte Produce N.V. v. Eastbrook Caribe A.V.V.*, 845 N.Y.S.2d 7, 7 (1st Dep't 2007). "The proponent of reformation must 'show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties.'" *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 574 (N.Y. 1986) (Kaye, J.) (quoting *Backer Mgmt. Corp. v Acme Quilting Co.*, 46 N.Y.2d 211, 219 (N.Y. 1978)).

### ii. Analysis

Reformation is available where the assent underlying the disputed contract was arrived at on the basis of either a mutual mistake or fraud. GHI alleges only the latter. Specifically, GHI asserts that "Plaintiff obtained coverage for himself and his dependants by fraud, deceit and trickery"; to wit, "Plaintiff and/or Village Fuel deliberately provided information indicating he was . . . eligible to participate in the [Village Fuel] Plan." (GHI Answer ¶ 85; *see also id.* ¶ 67.)

In order to substantiate these allegations of fraud, GHI must first establish that misrepresentations were made. To reiterate, as discussed above, there are disputed issues of material fact with respect to whether a misrepresentation occurred. These factual disputes preclude resolution of "exactly what was really agreed upon between the parties." *Chimart Assocs.*, 66 N.Y.2d at 574. Thus, for the reasons discussed above, GHI has not met its burden of demonstrating that it is entitled to summary judgment on these claims.

Turning to the nature of the reformation claims and the relief sought, at least one court in this District has suggested, without so holding, that reformation is available in a claim brought under section 502(a)(3) of ERISA. *Bona v. Barasch*, No. 01 Civ. 2289 (MBM), 2003 WL 1395932, at *12 (S.D.N.Y. Mar. 20, 2003); *cf. Nechis*, 421 F.3d at 103 (noting that the plaintiff's claim for reformation of an ERISA plan's appeal procedures under section 502(a)(3) failed to "allege a basis for reformation such as fraud, mutual mistake or terms violative of ERISA"); *Kawski v. Johnson & Johnson*, No. 04 Civ. 6208 (CJS), 2005 WL 3555517 (W.D.N.Y. Dec. 19, 2005) (granting

motion to amend the pleading and add a claim for equitable reformation under section 502(a)(3)); *DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund*, 975 F. Supp. 258, 267 (S.D.N.Y. 1997) (denying the defendants' motion for summary judgment because "the Court has the authority to order reformation of the Plan (if it is found in violation of ERISA)"). However, the Court is unaware of any instance in which a court in this District has granted equitable reformation for the purpose of permitting an insurance company to recover via restitution the benefits that it previously paid to an ERISA plan beneficiary.[7]

Nevertheless, the Court need not resolve this issue at this time in light of the factual disputes regarding the basic elements of GHI's reformation claims. Until those disputes are resolved, the Court cannot determine the extent to which the GHI Contract should be reformed and the monetary remedies, if any, that would appropriately follow from such reformation. Accordingly, the cross-motions of GHI and Village Fuel on GHI's reformation claims are is denied.

---

[7]  In both the Contract and the Insurance Certificate, GHI reserved the right to make payments directly to medical services providers rather than Plaintiff. (Diaz Aff. Ex. A at GHI 672; *id.* Ex. C at 33-34 ("Claim forms will usually be filed directly with GHI by Hospitals and Participating Providers.").) The extent to which GHI made payments to Plaintiff, as opposed to paying Plaintiff's medical services provider directly, is unclear from the record. However, the Court notes that a reformation claim under ERISA by an insurer to recover payments made to a third-party medical services provider *on behalf of* an ERISA plan beneficiary appears to be even more dubious than a claim to recover payments made directly to that beneficiary.

## C.  Village Fuel's Crossclaim

Finally, Village Fuel brings a crossclaim against GHI, alleging that GHI is a fiduciary to the Village Fuel Plan and that, "to the extent that judgment is entered against Village Fuel in favor of Plaintiff[,] . . . GHI remains, ultimately, liable for any and all damages against Co-Defendant Village Fuel." (Village Fuel Answer ¶ 33.) Village Fuel and GHI cross-moved for summary judgment on this crossclaim. For the reasons stated below, the Court concludes that the relief sought by Village Fuel is unavailable under ERISA. Accordingly, summary judgment is granted in favor of GHI, and Village Fuel's crossclaim is dismissed.

### 1.  Applicable Law

Under section 502(a)(2) of ERISA, "a participant, beneficiary or fiduciary" of an ERISA plan may bring a civil action "for appropriate relief under section 409 [entitled 'Liability for Breach of Fiduciary Duty']." *Varity Corp. v. Howe*, 516 U.S. 489, 507 (1996) (quoting 29 U.S.C. § 1132(a)(2)). Section 409(a) provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . ." 29 U.S.C. § 1109(a).

Under ERISA, "a person is a fiduciary with respect to a plan to the extent . . . [he or she] exercises any discretionary authority or discretionary control respecting management of such plan . . . ." 29 U.S.C. § 1002(21)(A) (defining "fiduciary"). ERISA fiduciaries are

held to a "prudent man standard," under which they are required to, *inter alia*, "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ." 29 U.S.C. § 1104(a)(1); *see also Russell*, 473 U.S. at 139-43. "The principal statutory duties imposed on [ERISA] fiduciaries 'relate to the proper management, administration, and investment of fund assets,' with an eye toward ensuring that 'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020, 1024 (2008) (quoting *Russell*, 473 U.S. at 142).

### 2. Analysis

Village Fuel alleges that GHI was a fiduciary under ERISA in relation to the Village Fuel Plan, and that GHI violated a fiduciary duty to Plaintiff by "intentionally and unlawfully disregarding the express terms of the group health insurance plan and denying group health insurance coverage . . . ." (Village Fuel Answer ¶ 31.) Village Fuel further alleges that "[a]s a fiduciary under ERISA, GHI is liable to make good to Village Fuel's group health insurance plan any losses to said plan resulting from its breaches of fiduciary duty and contract as to Plaintiff and to Co-Defendant Village Fuel." (*Id.* ¶ 32.) On the basis of these allegations, Village Fuel seeks to hold GHI "liable for any and all damages found against Co-Defendant Village Fuel." (*Id.* ¶¶ 32-33.)

Some of these allegations appear to support contract-based claims, such as indemnity or contribution. In fact, Village Fuel's Answer specifically references "breaches of contract" by GHI. (*Id.* ¶ 33.) However, as stated above, *see supra* note 2, to the extent Village Fuel's

claim is based on state law, it is preempted by ERISA. *See, e.g.*, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987); *Turcotte*, 2008 WL 4615903, at *9 & n.1. Therefore, the Court analyzes Village Fuel's crossclaim as one for breach of fiduciary duty under section 502(a)(2) of ERISA, and concludes that the compensatory damages sought by Village Fuel are unavailable under this provision of ERISA.

Village Fuel is as an "employer" under ERISA, 29 U.S.C. § 1002(5), and is therefore distinct from the Village Fuel Plan. A suit under section 502(a)(2) "is only proper to the extent that it seeks to recover losses sustained by 'the plan as a whole.'" *In re Marsh ERISA Litig.*, No. 04 Civ. 8157 (SWK), 2006 WL 3706169, at *6 (S.D.N.Y. Dec. 14, 2006) (quoting *Russell*, 473 U.S. at 134); *see also Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993) ("*Russell* therefore bars plaintiffs from suing under Section 502(a)(2) because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan."); *Bona*, 2003 WL 1395932, at *9 ("Section 502(a)(2) authorizes relief for the benefit of a plan only."). Therefore, under this provision, Village Fuel may not recover compensatory damages payable to itself, as opposed to the ERISA plan it administers.[8] Accordingly,

---

[8] The Court notes that, even if the crossclaim could be construed as being brought pursuant to ERISA's section 502(a)(3), it would be subject to the same deficiencies that are discussed above with respect to GHI's restitution claims. *See supra* section II.B.1.ii. "[A]lthough breach of fiduciary duty is an equitable claim, Plaintiff must also demonstrate that the *nature of recovery* is equitable." *Fisher*, 2007 WL 496657, at *5 (citing *Sereboff*, 547 U.S. at 361-62) (emphasis in original). For the reasons stated above, Village Fuel cannot recover compensatory damages — either for itself or on behalf of Plaintiff — in a claim for "appropriate equitable relief." *See Krauss*, 517 F.3d at

GHI's motion for summary judgment on Village Fuel's crossclaim is granted, and the crossclaim is dismissed.

### IV. CONCLUSION

For the reasons stated above, GHI's motion for summary judgment is denied, Village Fuel's motion for summary judgment is granted in part and denied in part, and the Court enters summary judgment in Plaintiff's favor, *sua sponte*, on GHI's counterclaim for restitution.     Thus, the pending claims remaining in this litigation are Plaintiff's claims against Village Fuel and GHI, subject to the ruling in note 2 of this decision, and GHI's crossclaims and counterclaims for rescission and reformation.  The parties are HEREBY ORDERED to appear for a status conference in this matter on April 23, 2009 at 2:30 p.m.

The Clerk of the Court is respectfully directed to terminate the motions docketed as document numbers 42 and 61.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: March 24, 2009
       New York, New York

***

Plaintiff Nicholas Scarangella is represented by Stephen P. Pazan, Spector Gadon & Rosen, 1000 Lenola Road, Post Office Box 1001, Moorestown, New Jersey 08057. Defendant Group Health, Inc. is represented by Michael H. Bernstein and John T. Seybert, Sedgwick, Detert, Moran & Arnold, LLP, 125 Broad Street, 39th Floor, New York, New York 10004; and Ted L. Wilkes, GHI, 441 Ninth Avenue, New York, New York 10001. Defendant Village Fuel is represented by Richard J. Quadrino and William James O'Mahony, Quadrino & Schwartz, P.C., 666 Old Country Road, Garden City, New York 11530.

---

630 ("Claims for money damages are therefore not cognizable under section 502(a)(3)); *see also Pereira v. Farace*, 413 F.3d 330, 339-41 (2d Cir. 2005).

-24-