USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/26/10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NICHOLAS SCARANGELLA,

                           **Plaintiff,**

                  **- against -**

GROUP HEALTH INC. and SCARANGELLA &
SONS, INC. d/b/a VILLAGE FUEL, as Administrator
of the VILLAGE FUEL EMPLOYEE BENEFITS
PLAN

                       **Defendants.**

**REPORT AND**
**RECOMMENDATION**

**05 Civ. 5298 (RJS) (RLE)**

**To the HONORABLE RICHARD J. SULLIVAN, U.S.D.J.:**

## I. INTRODUCTION

On August 11, 2009, Village Fuel, a co-Defendant in a lawsuit filed by ERISA beneficiary Nicholas Scarangella, filed this motion for attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1), and requested an award of $303.814.32. Defendant, Group Health, Inc. ("GHI"), opposed the motion and argued that Village Fuel was not entitled to attorneys' fees. For the following reasons, I recommend that Village Fuel be awarded **$101,950.03.**

## II. BACKGROUND

### A. Facts

On or about April 24, 2002, the president of Village Fuel, Patrick Scarangella, applied for a small group health insurance policy from GHI. (Mem. in Supp. of Def. Scarangella & Sons, Inc. d/b/a Village Fuel's Mot. for an Award of Att'ys' Fees from Def. Group Health, Inc. ("Village Mem."), at 2.) The group plan became effective on June 1, 2002, and automatically renewed on July 1, 2003. (*Id.* at 5.) The contract "named Village Fuel as the policyholder and stated that only eligible Full-Time Employees and their spouses and eligible dependents may be covered." *Scarangella v. Group Health Inc. and Scarangella & Sons, Inc. d/b/a Village Fuel*, 05

Civ. 05298 (RJS) (RLE), 2009 WL 764454, at *3 (S.D.N.Y. March 24, 2009). Although the contract defined "full-time" as twenty hours per week or more (*Id.*), Village Fuel asserts it was never informed of GHI's definition of health coverage eligibility. (Village Mem. at 3.)

Plaintiff Nicholas Scarangella[1] ("Scarangella"), a longtime employee of Village Fuel, applied for health coverage and listed his Florida address and employment start date of June 1, 1968, on a GHI Transaction Form. (*Id.* at 3 n.1.) Patrick Scarangella explained in a letter to GHI that although Scarangella's W-4 showed a hire date of March 15, 2002, he was employed prior to that date in a part-time capacity. (*Id.* at 4-5.) GHI approved Scarangella and his wife for coverage under the Village Fuel plan. (Doc. 94.) They were recertified in January 2004 after Village Fuel resubmitted proof of all employees' eligibility. (Village Mem. at 7.) GHI subsequently informed Village Fuel that it had concerns about Scarangella's employment status because of his conflicting Quarterly Tax Combined Withholding, Wage Reporting and Unemployment Insurance Forms ("NYS-45 Forms"); a mismatched social security number on the NYS-45 and W-4; and the Florida addresses of Scarangella and his wife's medical providers. (*Id.* at 7 n.4.)

Village Fuel argues that GHI's concerns were only generated in response to the several hundred thousand dollars of claims submitted on behalf of Scarangella's wife. (*Id.* at 7.) GHI asserts that its policy requires all claims over $25,000 to be forwarded to its Special Programs Investigation Unit, and that Scarangella was legitimately deemed ineligible for coverage after Village Fuel failed to supply documentation verifying that Scarangella regularly worked twenty hours per week. (Defendant Group Health Inc.'s Memorandum of Law in Opposition to Co-Defendant Scarangella & Sons, Inc. d/b/a Village Fuel's Motion For An Award of Fees ("GHI

---

[1] All references to "Scarangella" refer to Nicholas Scarangella.  Any reference to Patrick Scarangella will specify his first and last name.

2

Mem."), at 3-4.) Village Fuel's accountant represented to GHI that he was responsible for the clerical error with Scarangella's social security number. (Village Mem. at 8.) However, Village Fuel was unable to explain why the NYS-45 they sent to GHI listed Scarangella as an employee, while the NYS-45 they sent to the New York State Tax Department did not. (GHI Mem. at 4.) On July 19, 2004, GHI informed Village Fuel that the plan's coverage was terminated retroactively to June 1, 2002, because of "material misrepresentations in the application process." (*Id.*).

## B. Procedural History

GHI sued Village Fuel in New York State Supreme Court on August 6, 2004, seeking equitable rescission of the group contract and restitution for recovery of benefits paid under the plan. (*Id.* at 4-5.) On March 22, 2005, Village Fuel removed the lawsuit to federal court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446(B), on the grounds that this Court has original jurisdiction pursuant to ERISA over employee benefits eligibility. (Village Mem. at 9.) On April 28, 2005, GHI moved to remand the lawsuit to state court, arguing that ERISA did not apply and that Village Fuel's removal was untimely. (*Id.*) On June 3, 2005, Scarangella commenced the instant action against GHI and Village Fuel challenging the denial of his wife's health insurance claims. (*See* Compl., June 3, 2005.)

Although United States District Judge Kenneth Karas commented that the lateness of Village Fuel's motion to remand came close to sanctionable conduct, he entered an Order on August 5, 2005, directing GHI and Village Fuel to discontinue the state court action, consolidate that action with Scarangella's ERISA lawsuit, and assert all pending claims from the state court action as cross-claims in this case. (GHI Mem. at 5-6.) Pursuant to the Order, GHI filed its answer with cross-claims and counterclaims. (Doc. 11.) GHI no longer moved to rescind the

3

entire group contract and instead sought: (1) equitable rescission of the insurance certificate issued to Scarangella; (2) equitable reformation of the group policy to exclude coverage for Scarangella; and (3) equitable restitution requiring Village Fuel and Scarangella to reimburse GHI for the amount its payments exceeded any premiums collected. (Village Mem. at 9). On September 19, 2005, Village Fuel filed a cross-claim for equitable restitution, alleging breach of fiduciary duty. (Doc. 13.) It also sought indemnification by GHI in the event that Scarangella was successful against Village Fuel. (*Id.*)

GHI moved for summary judgment on Scarangella's claims, Village Fuel's cross-claim, and its three counter-claims and cross-claims against Scarangella and Village Fuel. (Docs. 42-48.) On January 22, 2008, Village Fuel filed its opposition to GHI's motion for summary judgment and served its cross-motion for summary judgment. (Docs. 60-65.) On March 24, 2009, District Judge Richard Sullivan issued an Amended Opinion and Order dismissing GHI's and Village Fuel's equitable restitution claims, denying GHI's motion for summary judgment on Scarangella's Complaint, and denying Village Fuel's motion for summary judgment on GHI's equitable rescission and equitable reformation claims. (Doc. 94.) On April 30, 2009, Judge Sullivan held a status conference to address resolution of the remaining claims. (Village Mem. at 13.) On May 1, 2009, he entered an Order directing the parties to submit a joint letter regarding which claims they intended to litigate and whether they wished to have a jury trial. (Doc. 98; Village Mem. at 13.) Subsequently, Scarangella settled with GHI and withdrew his claim against Village Fuel, and GHI voluntarily dismissed its remaining cross-claims against Village Fuel. (*Id.* at 14.) Thus, in July 2009, the Court dismissed all claims, and the case was closed. (Doc. 102.) This motion for attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1) followed.

4

## III. DISCUSSION

### A.  Standard for Attorneys' Fees

Courts evaluate 29 U.S.C. § 1132(g)(1) attorneys' fees motions by applying a three-part test. *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2154-55 (2010). First, the court must determine the degree to which a fee claimant is a prevailing party. Second, if the court finds that the claimant had some success on the merits, it must then determine whether an award of attorneys' fees is appropriate. *Id.* at 2157. The court may consider five factors to determine appropriateness: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees would deter other persons acting under similar circumstances; (4) whether the party requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Id.* at 2154 n.1 (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993)). *See also Chambless v. Masters, Mates, & Pilots Pension Plan*, 815 F.2d 869 (2d Cir. 1987). Finally, the court must limit a fee award to a reasonable amount. *Id.* at 2155 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

### B.  Standard For Prevailing Party

29 U.S.C. § 1132(g)(1) differs from other ERISA fee-shifting sections that explicitly limit fee awards to the prevailing party, and instead gives courts discretion to award fees to "either party." *Hardt*, 130 S.Ct. at 2156. Nevertheless, "historic fee-shifting principles and intuitive notions of fairness" dictate that fees only be awarded when a party has "some degree of success" on his claims. *Id.* at 2158 (internal quotations omitted). This must be more than a "trivial success on the merits or a purely procedural victor[y]." *Id.* (internal quotations omitted).

5

Further, a court must not conduct too lengthy an inquiry about the substantiality of the successful issues in order to find some success on the merits. *Id.* The judicial commentary and legal disposition of prior court proceedings may be used as evidence of the claimant's degree of success. *Id.* at 2158-59 (ERISA claimant did not win on summary judgment but achieved some success on the merits because the court found "compelling evidence" and was "'inclined to rule in [her] favor"). Village Fuel alleges that it prevailed on its cross-claim against GHI for equitable restitution under ERISA and its motions for summary judgment on GHI's restitution, rescission, and reformation claims brought pursuant to ERISA.

### 1.   Village Fuel Did Not Prevail On Its Equitable Restitution Claim

Both parties sought the remedy of equitable restitution, and both claims were dismissed. Pursuant to 29 U.S.C. § 1002(21)(A), GHI was a fiduciary responsible for properly managing and administering Village Fuel plan funds. *Scarangella*, 2009 WL 764454, at *21 (citing *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 5552 U.S. 248, 253 (2008)). A plan fiduciary may only make a claim for equitable restitution if "money belonging to the Plan can clearly be traced to particular funds or property in the beneficiary's possession." *Id.* at *16 (citing *Banyai v. Mazur*, No. 00 Civ. 9806 (SHS), 2007 WL 959066, at *3 (S.D.N.Y. Mar. 29, 2007)); ERISA § 502(a)(3). A claim for equitable restitution may only be made against a plan fiduciary in order to restore losses to the plan itself. § 502(a)(2).

Judge Sullivan found that GHI's claim was not made in equity as required by ERISA. First, it was in fact a legal claim for compensatory damages because Village Fuel and Scarangella did not segregate payments received, and any recovery would only be from their general assets. *Scarangella*, 2009 WL 764454, at *17. Further, it was likely that medical providers, not Village Fuel, received the payments GHI sought to recover. *Id.* Village Fuel's

6

claim was also dismissed by the District Court, as an ERISA fiduciary's duty is to the plan, not the employer. *Fisher v. Penn Traffic Co.*, No. 06 Civ. 5848 (HB), 2007 WL 496657 at *5 (S.D.N.Y. Feb. 16, 2007).

Thus, both GHI's and Village Fuel's claims were dismissed because of a misstatement about which parties might be involved in an ERISA equitable restitution claim. The District Court's language does not imply that either party was any more "successful" on the merits and states that the claims suffered from "the same deficiencies." *Scarangella*, 2009 WL 764454, at *21 n.8. Therefore, as to the restitution claims, neither party can be considered to have prevailed.

### 2. Village Fuel Did Not Prevail On GHI's Rescission Claim

GHI filed a cross-claim for equitable rescission to cancel the policy, alleging it was fraudulently induced by Village Fuel to provide coverage. *Id.* at *17. Both GHI and Village Fuel moved for summary judgment on this claim, and Judge Sullivan found "disputed issues of material fact with respect to whether a misrepresentation was made to GHI, and whether any such misrepresentation was material." *Id.* at *19. Therefore, Judge Sullivan ruled that neither party was entitled to summary judgment.

By itself, the District Court's language does not indicate that either party had any degree of success on the merits. The Court suggested, however, that procedural limitations would bar recovery by GHI, distinguishing between equitable rescission, used to rescind a contract, and rescission at law, used to recover expenses paid under a contract already cancelled by a moving party. *Id.* at *18. The fact that GHI's July 19, 2004 letter had already terminated coverage for all Village Fuel employees "suggests that these claims are legal [and not equitable] in nature," and thus that equitable rescission might be unavailable to GHI. *Id.* Nevertheless, since this statement

7

by the Court at most indicates a procedural victory by Village Fuel, it is insufficient under the *Hardt* standard to constitute "some success on the merits."

Village Fuel argues that it prevailed because GHI voluntarily dismissed the rescission claim after settling with Scarangella. (Bernstein Dec., Ex. V.) It interprets this as a "capitulation" by GHI that its case was meritless and that Village Fuel would have prevailed. (Village Reply Mem. at 2, "GHI only abandoned its claims…after its case was eviscerated by the Court's summary judgment decision" (emphasis in original)). GHI contends, however, that it only rescinded the claim once Village Fuel sold its assets and became "judgment proof" and "further litigation…was economically pointless." (GHI Mem. at 9; Bernstein Dec., Ex. V.) Village Fuel submitted evidence, however, showing it had informed GHI of the assets sale two years earlier, and it argued that the end of its business operations did not connote bankruptcy. (O'Mahony Dec., Ex. L; Village Reply Mem. at 2.)

Under the catalyst theory, a plaintiff is considered the "prevailing party" when his lawsuit is a substantial factor in inducing the defendant to voluntarily cease the challenged activity. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001). However, "the catalyst doctrine does not apply to attorneys' fee applications under ERISA." *Enright v. New York City Dist. Council of Carpenters Welfare Fund*, No. 99 Civ. 671 (SAS), 2001 WL 546838, at *3 (S.D.N.Y. May 22, 2001). Although *Hardt* lowers the bar for how much success is required, it does not alter how courts are to measure that success. Traditionally, courts have found a prevailing party where there was a "material alteration of the legal relationship of the parties." *Buckhannon*, 532 U.S. at 604.  This includes either "an enforceable judgment against the defendant 'or comparable relief through consent decree or settlement.'" *Nicholas By Nicholas v. Taylor County Bd. of Educ.*, 7 F. Supp. 2d 789, 792

(N.D.W.Va. 1998) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)). Because the change in the parties' relationship must be judicially sanctioned, "a defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur*." *Buckhannon*, 532 U.S. at 605. Accordingly, Village Fuel cannot be considered the prevailing party based on GHI's voluntary dismissal of its claim.

Even if the catalyst theory applied to ERISA, the Second Circuit has held that "the requisite causal connection between the lawsuit and the receiving of a benefit [of the ceased challenged activity] must be the 'threat of victory,' not the 'nuisance and threat of expense.'" *McManus v. Gitano Group, Inc.*, 59 F.3d 382, 384 (2d Cir. 1995) (quoting *Marbley v. Bane*, 57 F.3d 224, 235 (2d Cir. 1995)). Here, GHI's explanation for its voluntary dismissal falls into the latter category, so that Village Fuel cannot be a prevailing party. Although Village Fuel's merit-based inference is a possible explanation for the voluntarily dismissal, there is insufficient evidence to rule out alternative explanations. Therefore, as to the rescission claim, neither party can be considered to have "prevailed."

### 3. Village Fuel Had Some Success On the Merits With GHI's Equitable Reformation Claim

The doctrine of equitable reformation requires either "a mutual mistake of the parties, or . . . a mistake on plaintiff's part and a fraud by defendant." *Scarangella*, 2009 WL 764454, at *19 (quoting *Koam Produce, Inc. v. DiMare Homestead, Inc.*, 213 F. Supp. 2d 314, 326 (S.D.N.Y. 2002). GHI sought equitable reformation of the group policy so that it would reflect the terms and conditions GHI would have offered to Village Fuel if it had not allegedly misrepresented Scarangella's status. Both GHI and Village Fuel moved for summary judgment, but Judge Sullivan denied both motions because it was factually disputed whether Village Fuel materially misrepresented Scarangella's eligibility. *Scarangella*, 2009 WL 764454, at *20. Judge

Sullivan did not indicate whether GHI or Village Fuel would likely be more successful in establishing or negating the element of fraud. *Id*, at *19. ("factual disputes preclude resolution of 'exactly what was really agreed upon between the parties'") (quoting *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 574 (N.Y. 1986)).

As in *Hardt*, the District Court's comments indicate its opinion regarding one party's likelihood of success on the merits. After citing cases in which claimants sought reformation, Judge Sullivan noted that no "court in this District has granted equitable reformation for the purpose of permitting an insurance company to recover." *Id.* at *20. He suggested that GHI's claim was "dubious," especially because GHI sought to recover payments that might have been paid to third-party medical services providers. *Id.* at *20, n.7. Judge Sullivan's doubt as to whether GHI could bring the equitable reformation claim suggests that Village Fuel would have been likely to succeed on this claim.

GHI argues that it subsequently decided not to pursue this claim because Judge Sullivan determined that the plan already conformed to the eligibility guidelines set forth in N.Y. INS. LAW § 3231. GHI asserts that because it made a choice not to pursue reformation after the summary judgment phase, it "never made" an argument for reformation, (GHI Mem. at 11 n.4) but this distinction between arguments raised from a summary judgment posture and a trial posture is inapposite. *Hardt* establishes that the degree to which a party prevailed can be gleaned from summary judgment alone and need not incorporate hypothetical inferences about parties' subsequent litigation decisions. Therefore, with respect to the motion for summary judgment on GHI's equitable reformation claim, Village Fuel had some success on the merits and should be considered the prevailing party on this claim.

#### 4.  The Settlement Between GHI and Scarangella Does Not Constitute Success On the Merits for Village Fuel

Village Fuel argues that it "prevailed" because it assisted in advancing legal arguments on behalf of Scarangella[2] that ultimately settled in Scarangella's favor. GHI contends that Village Fuel lacks standing to claim a success based on the benefit conferred on an adverse party. (GHI Mem. at 12.) Standing doctrine, however, is typically a threshold matter determining which parties may bring suit, rather than a method of allocating credit amongst parties once a suit has been brought. To have Article III standing, (1) a party must have suffered an injury in fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Bennet v. Spear*, 520 U.S. 154, 162 (1997). Here, the "injury" at issue is the parties' litigation expense. The prevailing party determination does not directly bear on this injury because a litigant's degree of success in a completed proceeding does not change its cost. Thus, a standing analysis is inapposite. Nevertheless, this Court finds no authority to support the claim that assistance with another party's litigation belongs in a prevailing party analysis, and Village Fuel has not cited any.

In any case, although the claims by Scarangella and Village Fuel are based on the same causes of action (Village Reply Mem. at 2), the Parties' substantive arguments against GHI were wholly distinct. Therefore, any success Scarangella may have had is not pertinent to the prevailing party analysis with respect to a motion for attorneys' fees between Village Fuel and GHI.

---

[2] This assertion was confirmed by Scarangella's counsel, (Village Reply Mem. at 2), and is evident from Village Fuel's Memorandum of Law in Opposition to Defendant Group Health's Motion for Summary Judgment (Doc. 60).

11

**C.  An Award of Attorneys' Fees to Village Fuel Is Appropriate**

Once a court has determined that a claimant has had some degree of success, *Chambless* provides five factors to determine appropriateness: (1) the degree of opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees would deter other persons acting under similar circumstances; (4) whether the party requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Chambless*, 815 F.2d 869. Courts have discretion to apply *Chambless* to a fee analysis for ERISA claims but are not required to do so. *Hardt*, 130 S.Ct. at 2158 (*Chambless* factors "bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence").

The factors may be assigned different weight. For example, "failure to satisfy the [common benefit] *Chambless* factor does not preclude an award of attorneys' fees," *Locher*, 389 F.3d at 299, whereas "the degree of culpability and the relative merits 'are not dispositive' . . . [but] do 'weigh heavily.'" *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 48 (2d Cir. 2009) (quoting *Anita Foundations*, 902 F.2d at 189). When the "degree of culpability" and "relative merits" factors are intertwined and closely related, courts may consider them together. *Slupinski*, 554 F.3d at 48. In contrast, "culpability" and "bad faith" must be assessed independently. *Paese v. Hartford Life and Accident Ins. Co.*, 449 F.3d 435, 450 (2d Cir. 2006).

An award of reasonable attorneys' fees to a prevailing party is favorable absent a particular justification or special circumstances that would make it unjust. *Enright*, 2001 WL 225032, at *14. Courts "consider which party is requesting fees . . . and address the potential deleterious effect of a fee award." *Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund*, 902

12

F.2d 185, 188 (2d Cir. 1990). When the party moving for fees is the claimant, "ERISA's

attorneys' fee provisions must be liberally construed to protect the statutory purpose of

vindicating" beneficiary rights. *Locher v. Unum Life Ins. Co. of Amer.*, 389 F.3d 288, 298 (2d

Cir. 2004). Here, the *Chambless* factors weigh in favor of awarding attorneys' fees to Village

Fuel for its equitable reformation claim.[3]

### 1. GHI's Conduct Was Culpable but Not in Bad Faith

#### a. Culpability

"Culpable conduct is commonly understood to mean conduct that is blameable;

censurable; . . . at fault; involving the breach of alleged duty or the commission of a fault."

*Slupinski*, 554 F.3d at 48 (quoting *Locher*, 389 F.3d at 299). A defendant insurance company is

culpable if it violates ERISA and deprives beneficiaries of their rights. *Salovaara v. Eckert*, 222

F.3d 19, 28 (2d Cir. 2000) This can happen when the insured rests an eligibility determination on

an unreasonable basis. *Slupinski*, 554 F.3d at 49. Department of Labor ("DOL") regulations

require that insurance companies inform plan participants of adverse benefits determinations

with sufficient content and timeliness, 29 C.F.R. §§ 2560.503-1(f)(2)(iii)(B), (g)(1)(ii), and

provide a "full and fair review of [a] claim and the adverse benefit determination," including

giving a claimant the opportunity to review and submit all pertinent documents. §§ 2560.503-

1(h)(1), (h)(2).

Judge Sullivan found that the Explanation of Benefits ("EOB") forms sent to Scarangella

by GHI did not provide sufficient content because they did "not reference any provisions of the

GHI contract or the Insurance Certificate." *Scarangella*, 2009 WL 764454, at *11. He also found

a disputed issue of material fact with respect to whether GHI provided the EOB's to Scarangella

---

[3] Because the Court found the *Hardt* "prevailing party" threshold inquiry satisfied only with respect to the equitable reformation claim, the Court does not reach whether an award of attorneys' fees would be appropriate for Village Fuel's other claims.

"within a reasonable period of time." *Id.* Village Fuel asserts that such regulatory noncompliance wrongly permits post-hoc rationalizations during litigation. It argues that if GHI had properly explained its determination of Scarangella's ineligibility, GHI would not have been able to shift its explanation from Scarangella's incongruent domicile and social security number to his allegedly inadequate employment history. (Village Mem. at 19). This switching of rationales deprives a denied applicant the opportunity to rectify an error at the time of the denial. Accordingly, GHI's regulatory noncompliance was "culpable" because it infringed on Scarangella's right to receive benefits under his ERISA plan.

Additionally, an insurance company that violates the requirement to conduct a "fair and open-minded consideration" is culpable under *Chambless. See Paese v. Hartford Life and Acc. Ins. Co.*, No. 02 Civ. 9778 (DC), 2004 WL 764760 (S.D.N.Y. Apr. 9, 2004), *aff'd*, 449 F.3d at 451; *Slupinski*, 554 F.3d at 38 (cursory and incomplete review of claimant's disability failed to take into account abundant medical evidence).[4] For example, an insurance company may not adopt a categorical exclusion which violates ERISA by depriving a plaintiff "of procedural rights and fact-specific consideration to which he was entitled under the Plan." *MacLeod v. Procter & Gamble Disability Ben. Plan*, 460 F. Supp. 2d 340, 349 (D. Conn. 2006). Village Fuel asserts that GHI denied Scarangella a fair and open-minded eligibility determination and demonstrated its prejudgment about his eligibility by ignoring Village Fuel's request to provide documentation of the alleged misrepresentation so that it could be clarified (Brand Aff., Ex. A, Doc. No. GHI 001222),]; refusing to speak with Village Fuel regarding the issues contested in Village Fuel's application for Scarangella's coverage; and filing a lawsuit against Village Fuel immediately after advising Village Fuel of its concerns. (Village Mem. at 17-18).        GHI argues that it

---

[4] Although Scarangella's denial was not based on a medical condition, the DOL regulations "do not draw distinctions between medical and nonmedical benefits determinations." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220 (2004).

could not have complied with the DOL requirements because Village Fuel never possessed the necessary documentation. (GHI Mem. at 15.) However, GHI merely notes Village Fuel's lack of documentation pertaining to weekly hours worked. (Bernstein Dec., Ex. U.) Thus, GHI's initial finding of ineligibility – based on domicile and social security number – constituted a failure to provide a thorough, fact-specific determination.

Judge Sullivan found that there were insufficient facts to determine whether Village Fuel misrepresented Scarangella's eligibility. Arguably, the lack of abundant evidence of Scarangella's eligibility makes GHI's presumption that he was ineligible less egregious. DOL regulations, however, require that an insurance company faced with ambiguous evidence conduct a thorough investigation into a claimant's particular circumstances. By refusing to accept remedying documentation and clarification as to whether the basis for denial was employment history, domicile, or social security number, GHI deprived Scarangella of his rights under ERISA. Thus, GHI was culpable and "failed to comply with the ERISA guidelines  . . . [by not giving the claimant] the kind of review to which [h]e was entitled under applicable law." *Hardt*, 130 S.Ct. at 2154.

### b.  GHI Did Not Act In Bad Faith

Courts have discretion to award attorneys' fees when a non-prevailing party acted in bad faith by bringing an "unreasonable, frivolous, meritless, or vexatious" action. *Alyeska Pipeline Serv's v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975); *see also Carrion v. Yeshiva Univ.*, 535 F.2d 722, 726027 (2d Cir. 1976)). Courts applying *Chambless* find bad faith when a party brings "frivolous or improper arguments." *Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 383 (2d Cir. 2002). Village Fuel argues that GHI acted in bad faith by pursuing expensive discovery but later attempting to exclude it from the record. (Village Mem. at 20-21.) This claim is meritless. It

15

is true that an ERISA plan may dictate that a district court utilize the arbitrary and capricious standard of review, *Scarangella*, 2009 WL 764454, at *11. In such a case the review would be limited to the administrative record. *Wiener v. Health Net of Conn., Inc.*, 311 Fed. Appx. 438, 441-42 (2d Cir. 2009) (citing *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995)). Judge Sullivan, however, reviewed the benefits termination *de novo* because of "ambiguity" in the Plan provisions. *Scarangella*, 2009 WL 764454, at *12. Because GHI could not know the ultimate standard of review that would be applied, it was reasonable for GHI to argue that the review be limited to the administrative record while preparing discovery in the event of an adverse ruling. Furthermore, Village Fuel's argument is weakened because it did not identify any specific examples of unreasonableness and did not challenge the scope of discovery during the discovery phase. *Id.* at 21. Accordingly, Village Fuel has failed to show that GHI's pursued discovery in bad faith.

Village Fuel further alleges that GHI acted in bad faith by engaging in "post-claim underwriting" procedures that target high dollar claims. (Village Mem. at 21.) A policy of pursuing large claims, however, does not, standing alone, suggest impropriety or bad faith. In light of GHI's statutory requirement to monitor claims for potential fraud in order to avoid higher premiums for other eligible enrollees, it was reasonable for GHI to investigate the considerable claims submitted by Scarangella on behalf of his wife. N.Y. INS. LAW § 409 (describing purpose of and process for implementing fraud prevention plans and special investigations units).[5]

GHI asserts that Village Fuel's "submit[ting] false [tax] statements . . . blunts any claim of [its own] bad faith." (GHI Mem. at 16.) While Judge Sullivan mentioned Village Fuel's

---

[5] This is consistent with the "culpability" analysis. The fact that GHI's decision to investigate Scarangella's claims is not evidence of bad faith does not guarantee that GHI's course of investigation itself was valid.

potentially suspect practices, he noted they were not relevant to the instant claims. *Scarangella*, 2009 WL 764454, at *15, n.3. Further, the fact that GHI decided to maintain a relationship with Village Fuel and not cancel the entire group contract as originally planned contradicts its suspicion about Village Fuel's tax and payroll practices. Nevertheless, Village Fuel's inconsistent paperwork (e.g., NYS-45 forms) provides a plausible basis for GHI's initial questioning of Scarangella's eligibility. Because Village Fuel provided insufficient evidence of bad faith by GHI, this factor weighs against an award of attorneys' fees.

### 2.   GHI Has the Ability to Satisfy An Award of Attorneys' Fees

GHI concedes that it has sufficient funds to pay Village Fuel's attorneys' fees. It contends, however, that this factor is "neutral" because Village Fuel manipulated the fee-shifting provision by rendering itself judgment proof. (GHI Mem. at 20.) Regardless of the significance this Court assigns to Village Fuel's sale of its assets, only the opposing party's solvency is pertinent to the *Chambless* analysis. Thus, this factor weighs in favor of an award of attorneys' fees. However, "most courts pay little attention to this factor and find it to be 'of little significance.'" *Zervos v. Verizon New York, Inc.*, No. 01 Civ. 0685 (GBB) (RLE), 2002 WL 31553484, at *3 (S.D.N.Y. Nov. 13, 2002) (quoting *Enright*, 2001 WL 225032, at *16).

### 3.   The Litigation Does Not Benefit All Plan Beneficiaries But Does Help to Resolve a Significant Legal Question Regarding ERISA

This factor weighs in favor of attorneys' fees if the court determines that the movant's claim benefits others, either because the remedy goes directly to a common fund or because the claim "provide[s] an opportunity to increase knowledge and improve procedures in a way that ultimately benefit[s] others." *Locher*, 389 F.3d at 299 (internal quotations omitted). Because GHI's equitable reformation claim only affected Scarangella's coverage, it does not benefit the

17

group plan members.[6] Nevertheless, Judge Sullivan's ruling helps resolve the significant legal question of whether ERISA permits equitable reformation claims by an insurance company. Judge Sullivan was skeptical that GHI could succeed on this claim in light of both the possibility that its payments were made to third-party medical providers and the lack of precedent favoring insurance companies in general. Because the Court's analysis addressed the legal question of the availability of equitable reformation claims under ERISA, this factor weighs slightly in favor of an award of attorneys' fees to Village Fuel.

### 4. The Relative Merits of the Parties' Positions Weigh in Favor of an Award of Attorneys' Fees

As explained above, Village Fuel achieved some success on the merits for its motion for summary judgment on GHI's equitable reformation claim. Although the Court determined that there was a material factual dispute regarding whether Village Fuel materially misrepresented Scarangella's benefits eligibility, the language and tone of the Court's opinion indicates its view that Village Fuel was more likely to succeed. *Scarangella*, 2009 WL 764454, at *20, 20 n.7 (questioning ability of insurance companies to succeed on ERISA equitable reformation claims and calling GHI's claim "dubious"). Accordingly, this factor weighs slightly in favor of an award of attorneys' fees to Village Fuel.

### 5. An Award of Attorneys' Fees Would Deter Other Insurance Companies Acting Under Similar Circumstances

The deterrence factor "emphasizes the deterrence gained from the fee award, not the trial decision." *Leyda v. AlliedSignal Inc.*, 322 F.3d 199, 210 (2d Cir. 2003). Village Fuel offers evidence of legislators' suspicions about "post-claim underwriting," and argues that an award of attorneys' fees would deter other health carriers from engaging in this industry practice.

---

[6] Because this Court found that Village Fuel did not prevail on GHI's equitable rescission claim, it does not reach the parties' arguments regarding whether GHI's decision not to rescind the entire group plan can be attributed to Village Fuel's litigation.

(O'Mahony Dec., Ex. M, N.) Village Fuel's arguments concerning post-claim underwriting, however, pertain only to the rescission claim.

With respect to the reformation claim, awarding attorneys' fees to Village Fuel would have a proper deterrent effect. Courts use attorneys' fees to encourage defendants to investigate beneficiaries' claims more thoroughly before initiating litigation. *Lampert v. Metro. Life Ins. Co.*, No. 03 Civ. 5655(GEL), 2004 WL 1395040, at *2 (S.D.N.Y. June 21, 2004) ("award of fees may encourage defendant and other similarly situated parties to be more responsive to accepting meritorious positions . . . prior to the filing of a complaint, thus . . . avoiding needless litigation"). GHI failed to show that it thoroughly investigated the issues before filing suit. A partial award of attorneys' fees may be granted to deter conduct that was not egregious but was unreasonable. GHI's conduct falls in this category. *Compare Zurndorfer v. Unum Life Ins. Co. of Amer.*, 543 F. Supp. 2d 242, 264 (S.D.N.Y. 2008) (granting fees when defendant acted in "unreasoned, arbitrary manner" by ignoring unambiguous evidence of medical disability) *and Leyda*, 322 F.3d at 210 (denying fees because award would have no deterrence effect beyond finding of liability itself). Therefore, this factor also weighs in favor of an award of attorneys' fees.

In sum, all but one of the *Chambless* factors weigh in favor of awarding attorneys' fees to Village Fuel..

## D. The Award of Attorneys' Fees Must Be Reasonable

### 1. Applicable Standard

Courts must limit a fee award to a reasonable amount by determining both "the number of hours reasonably expended on the litigation . . . [and] a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). The party

seeking a fee award bears the burden of demonstrating that the claimed rates and number of hours are reasonable. *Id.* When determining the number of reasonable hours, "excessive, redundant, or otherwise unnecessary" hours may be excluded. *Patrolmen's Benevolent Ass'n v. City of New York*, No. 97 Civ. 7895 (SAS), 2003 U.S. Dist. LEXIS 13472, at *6 (S.D.N.Y. July 31, 2003). A court has the discretion to make an across-the-board percentage reduction to exclude unreasonable hours. *Luciano*, 109 F.3d at 117.

Courts may also "reduce the fee awarded . . . by reason of the plaintiff's partial or limited success." *Kassim v. City of Schenectady*, 415 F.3d 246, 255-56 (2d Cir. 2005) (internal quotations omitted). A court has the discretion to make a partial award based on the balancing of the *Chambless* factors. *See, e.g., Seitzman v. Sun Life Assurance Co. of Canada, Inc.*, 311 F.3d 477, 487 (2d Cir. 2002); *Smith v. Miller Brewing Co. Health Benefits Program*, 860 F. Supp. 855, 857-58 (M.D. Ga. 1994) (court awarded 55% of request fee amount because "his position was favored by about 55%). If a plaintiff has only achieved partial success, courts may use an overall reduction instead of identifying which hours were dedicated to non-prevailing claims. *Handschu v. Police Dept. of the City of New York*, 679 F. Supp. 2d 488, 499 (S.D.N.Y. 2010) (citing *Hensley*, 461 U.S. at 430-40).

In its discretion to determine a reasonable hourly rate, the court is not required to follow a rigid formula but instead shall "bear in mind all of the case-specific variables . . . identified as relevant to the reasonableness of attorneys' fees." *Arbor Hill*, 522 F.3d at 189-90. The Second Circuit has adopted several factors to guide the reasonable rate inquiry:

> (1) The time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to accepting the case; (5) the attorneys' customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the results obtained; (9) the experience, reputation,

and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*LaBarbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 353 (E.D.N.Y. 2009). The reasonableness of the rate is measured by the prevailing market rate for lawyers in the district in which the ruling court sits. *Polk v. New York State Dep't of Corr. Serv's.*, 722 F.2d 23, 25 (2d Cir. 1983). In the Second Circuit, "current rates, rather than historical rates, should be applied." (*LeBlanc-Sternberg*, 143 F.3d at 764). To determine the prevailing rate, courts may conduct an empirical inquiry based on the parties' evidence or may rely on the "court's own familiarity with the rates" if no such evidence is submitted. *Stirrat v. Ace Audio/Visual, Inc.*, 2007 WL 2229993 (S.D.N.Y. Jul. 31, 2007) (quoting *Farbotko v. Clinton County of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005)).

## 2. The Award Must Be Limited to a Reasonable Amount

Village Fuel requests an award of $303,814.32 ($291,673.13 based on 928.00 hours expended plus disbursements of $12,141.19). (Village Mem. at 25.) Village Fuel reduced its original calculation by 10% to account for "inefficiencies." (Decl. of Richard J. Quadrino ("Quadrino Decl.") ¶ 22, Dec. 18, 2009.)

Village Fuel lists its hourly rates for attorneys at the time of the submission as: $450 for Quadrino, $350 for O'Mahony, and $300 for Hack. (*Id.* ¶ 13.) Quadrino has approximately twenty-five years of legal experience, fifteen of which have been focused on ERISA-related claims. (*Id.* ¶¶ 5-6.) O'Mahony has approximately twenty-seven years of legal experience, five of which have been focused on ERISA-related claims. (*Id.* ¶¶ 9-10.) Hack has approximately ten years of legal experience, all of which have been focused on ERISA-related claims. (*Id.* ¶ 11.) This Court finds that $300-450 per hour for an attorney who specializes in this type of litigation is reasonable for a complex case with numerous claims. *See New York Dist. Council of*

*Carpenters Pension Fun v. Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (awarding $425 per hour for a partner in 2009); *Curry v. Amer. Intern. Group, Inc. Plan No. 502*, 579 F. Supp. 2d 424, 426-27 (S.D.N.Y. 2008) (awarding $400 per hour for a partner in 2008). According to the time record, paralegals were charged at $150 per hour, which is a reasonable rate. (Quadrino Decl., Ex. C; *See New York Dist. Council of Carpenters*, 657 F. Supp. 2d at 424).

GHI claims that Village Fuel's time records are inadmissible because they state the firm's 2009 rate of $450 per hour rather than the $350 per hour rate stated in the firm's retainer agreement with Village Fuel. (GHI Mem. at 23.) GHI therefore concludes that "there is no way to verify the authenticity of [Village Fuel's] records." (*Id.*). However, without reasonable evidence of perjury, this Court will not presume that sworn affidavits are intentionally deceitful. Furthermore, aside from the altered hourly rate, GHI has not specified any indicia of untrustworthiness that would render the evidence inadmissible. *See Trustees of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 901 (7th Cir. 2009). Accordingly, the Court will consider Village Fuel's time records. *MRT Const., Inc. v. Hardrives, Inc.*, 158 F.3d 478 (9th Cir. 1998) (attorney bills and invoices are business records within the meaning of Federal Rule of Evidence 803(6) and are admissible to prove attorney fees).

ERISA authorizes a district court to award attorneys' fees incurred only after a district court has assumed jurisdiction. *Peterson v. Continental Casualty Co.*, 282 F.3d 112, 119 (2d Cir. 2002). Thus, the $21,125.00 in fees and the $373.87 in costs incurred before the case was removed to this District cannot be included. As such, Village Fuel's fee request is reduced from $291,673.13 to $270,548.13 and Village Fuel's disbursement request is reduced from 12,141.19 to $11,767.32. The hours expended after that date represent a reasonable and appropriate effort. The tasks itemized on the summary of Village Fuel time records, e.g., pleading drafts, document

requests and interrogatories, motions drafts, court preparation, and legal research, are reasonable in this type of litigation. Additionally, it is reasonable to include the time and expense devoted to settlement because, although ultimately unsuccessful, the purpose of settlement is to avoid litigation.

Village Fuel was the prevailing party for only one of its three claims. Therefore, this Court has discretion to reduce the fee award to one third, or $90,182.71. *Seitzman*, 311 F.3d at 487. Village Fuel is also entitled to recover its costs of $11,767.32.

23

## IV. CONCLUSION

In conclusion, I recommend that Village Fuel be awarded attorneys' fees of $90,182.71 and costs of $11,767.32, for a total of **$101,950.03.**

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard J. Sullivan, 500 Pearl Street, Room 640, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); FED. R. CIV. P. 72, 6(a), 6(d).

**Dated: October 26, 2010**
**New York, New York**

Respectfully Submitted,

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**

Counsel for Co-Defendant Village Fuel
Quadrino Schwartz
666 Old Country Road – 9th Floor
Garden City, New York 11530

Counsel for Defendants GHI
Sedgwick, Detert, Moran & Arnold LLP
125 Broad Street – 39th Floor
New York, NY 10004-2400