# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NICHOLAS SCARANGELLA,                         Civil Action No.:
                                              05 CV 5298 (RJS) (RLE)
                    Plaintiff,

     -against-
                                              **DECLARATION OF**
GROUP HEALTH INC. and SCARANGELLA &           **RICHARD J. QUADRINO**
SONS, INC. d/b/a VILLAGE FUEL, as
Administrator of the VILLAGE FUEL EMPLOYEE
BENEFITS PLAN,

                    Defendants.
------------------------------------------------------------------X

      RICHARD J. QUADRINO, an attorney admitted to practice before the Court, declares pursuant to 28 U.S.C. 1746, under penalties of perjury, that the following is true and correct:

      1.     I am a partner in the firm Quadrino Schwartz, with offices located at 233 Broadway, New York, New York and 666 Old Country Road, Garden City, New York. Our firm has Represented Village Fuel in this action from the time that it was initially commenced by GHI in state court, through and including all stages of the proceedings in this Court after removal.

      2.     This Declaration is submitted in support of Village Fuel's motion for legal fees in the above matter, pursuant to ERISA. This Declaration addresses the relevant experience of Village Fuel's counsel, the reasonableness of the number of hours expended, and the reasonableness of the hourly rates that should be used for the calculation of a fee award.

      3.     This matter involved the rights and legal relationships of an employee, his spouse, an employer, and a health insurer under an ERISA-governed health insurance policy issued by Group Health, Inc. ("GHI"). The issues presented in the case included: (1) the applicability of ERISA as a threshold matter, (2) the underwriting and issuance of insurance policies governed by ERISA, (3)

the terms of coverage under the ERISA plan, (4) the procedural rights of the employer and employee under the governing regulations promulgated by the Department of Labor, and (5) the myriad of issues concerning the rights of the parties in litigation, including the standard of review, scope of review, discovery rights, and the viability of various legal claims under ERISA.

**Experience and Reputation of the Quadrino Schwartz Firm**

4. Quadrino Schwartz has been representing clients in insurance matters and ERISA-governed insurance matters since its inception in 1996. The firm has a national practice in ERISA and non-ERISA governed insurance claims, ERISA appeals, and ERISA litigation. The founding partners and other attorneys in the firm have published articles regarding ERISA issues, spoken at national conferences, and litigated various matters in this District and many other Districts around the United States, including ERISA class actions.

5. A number of the firm's ERISA cases have addressed cutting edge issues, have succeeded on behalf on ERISA beneficiaries, and resulted in published decisions, including:

- Scarangella v. Group Health Inc., Slip Copy, 2009 WL 764454, 46 Employee Benefits Cas. 1747 (S.D.N.Y., March 24, 2009);

- In re UnumProvident Corp. ERISA Benefits Denial Actions, 245 F.R.D. 317, 2007 WL 2505559, 42 Employee Benefits Cas. 1361(E.D.Tenn., September 04, 2007);

- Peck v. Aetna Life Ins. Co., 495 F.Supp.2d 271, 2007 WL 1598107 (D.Conn., June 01, 2007);

- Morgenthaler v. First Unum Life Ins. Co., 2006 WL 2463656 (S.D.N.Y., August 22, 2006);

- Lijoi v. Continental Cas. Co., 414 F.Supp.2d 228, 2006 WL 322229 (E.D.N.Y., February 13, 2006);

- Napoli v. First Unum Life Ins. Co., Not Reported in F.Supp.2d, 2005 WL 167598 (S.D.N.Y., January 25, 2005);

2

- ❏ Pearl v. Monarch Life Ins. Co., 289 F.Supp.2d 324, 2003 WL 22461963, 31 Employee Benefits Cas. 1936 (E.D.N.Y., October 30, 2003);

- ❏ Napoli v. First Unum Life Ins. Co., 78 Fed.Appx. 787, 2003 WL 22454481 (2nd Cir., October 29, 2003);

- ❏ Keir v. UnumProvident Corp., 2003 WL 2004422, 30 Employee Benefits Cas. 1598 (S.D.N.Y., April 29, 2003);

- ❏ Connors v. Connecticut General Life Ins. Co., 272 F.3d 127, 2001 WL 1464528, 27 Employee Benefits Cas. 1014 (2nd Cir., November 19, 2001);

- ❏ Searles v. First Fortis Life Ins. Co., 98 F.Supp.2d 456, 2000 WL 679892 (S.D.N.Y., May 24, 2000).

**Richard J. Quadrino**

5. Your Declarant (Mr. Quadrino) has been practicing law since 1985, was admitted to practice in the Southern and Eastern Districts of New York in 1993, and has been actively handling ERISA-governed claims, ERISA appeals, and litigation of ERISA-governed matters since 1994.

6. Over the past 15 years, Your Declarant has litigated both ERISA-governed and non-ERISA governed employee benefit cases in New York and throughout the United States in various Districts, having been admitted *pro hac vice* on numerous matters. Your Declarant has also litigated ERISA-governed class actions both in New York and in Districts outside New York. Our firm has consistently employed at least six (6) attorneys devoted full time to handling such claims, ERISA appeals, and litigating such cases, including in Districts around the United States.

7. You Declarant has spoken at national seminars and to industry groups on ERISA issues over the past 10 years and has participated and attended conferences addressed to these issues. As such, Your Declarant has gained familiarity with the skills, experience, and success rates of the

3

various attorneys practicing in this field throughout the country and become familiar with the reasonable hourly rates charged to be charged for services on these matters.

**William O'Mahony**

8. Mr. O'Mahony is 1993 graduate of the University Pittsburgh School of Law. He is admitted to the Bar of the States of New York, New Jersey and Indiana. He is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York, the Northern District of Indiana, and the Western District of Michigan.

9. From September 1993 to December 1996, he was a litigation associate at the law firms of Rowe, Foley & Gardner and Huelat & Gardner, where he handled the defense of insureds in product liability, general liability, and employment discrimination claims and represented insurance carriers in insurance coverage and bad faith litigation. Thereafter, he was employed by Condon & Forsyth as a litigation associate representing international airlines in complex litigation arising from aviation crash disasters and cargo losses. From October 1997 to April 1004, he was an associate at the law firm of Rivkin Radler and Kremer LLP/Rivkin Radler LLP, where he worked in the Corporate and Professional Liability Practice Groups and was responsible for the investigation and defense/prosecution of complex corporate and commercial claims, including contract, unfair competition, trade secret and restrictive covenant litigation, corporate dissolution proceedings and shareholder disputes, and the defense of professional liability and officer/director liability claims.

10. In April 2004, Mr. O'mahony joined the law firm of Quadrino Schwartz and became a Partner in 2006. He has concentrated on insurance coverage litigation, ERISA litigation, and complex litigation. He has litigated various ERISA issues in many cases, conducting all aspects of

4

the litigation on behalf of the firm's clients.

**Michail Z. Hack**

11. Michail Hack received his bachelor's degree from Michigan State University and his Juris Doctorate from Touro Jacob D. Fuchsberg Law Center in 2000. He has participated in the strategy and litigation of ERISA class actions commenced by Quadrino Schwartz and is an accomplished ERISA practitioner and litigator. Mr. Hack has devoted all of his nearly 10 years of practice to all aspects of ERISA jurisprudence, including the claims process governed by the Department of Labor Regulations, the ERISA appeals process, and the myriad of issues that arise in ERISA litigation.

12. Mr. Hack has co-authored and published articles in the New York Law Journal on ERISA jurisprudence that address cutting-edge issues affecting the rights of ERISA beneficiaries.

**Hourly Rates**

13. Recently, ERISA practitioners in this Court, with extensive experience in this field of practice, have been awarded hourly rates between $500 and $600 per hour under ERISA's fee-shifting statutory provisions. In one such recent case, Judge Sullivan, the Judge on this case, used an hourly rate of $560 per hour in an ERISA legal fee award.

12. The current hourly rates charged to the firms clients for Mr. Quadrino, Mr. O'Mahony, and Mr. Hack are: $475 for Mr. Quadrino, $375 for Mr. O'Mahony, and $325 for Mr. Hack. These rates will be increased next year to $500, $400, and $350 respectively. There have been incremental increases in the hourly rates of $25 per hour per attorney over the past years. At the time that this case was commenced in 2004, the rates of Messrs. Quadrino, O'Mahony, and Hack

5

were thus the older rates from five years ago; i.e., $350 for Mr. Quadrino, $250 for Mr. O'Mahony, and $200 for Mr. Hack. See the retainer agreement between Village Fuel and Quadrino Schwartz, annexed hereto as Exhibit A.

13.     Annexed hereto is the Declaration of Scott Reimer, an seasoned ERISA practitioner in this Court. In his Declaration, he details his extensive ERISA experience, his knowledge of the Quadrino Schwartz firm and its attorneys, and his opinion regarding the firm's rates. At the time of his Declaration, the firm had not yet implemented the 2009 rate increase and thus the rate for Mr. Quadrino at that time was $450 per hour and the rates for Messrs O'Mahony and Hack were $350 and $300 respectively.

14.     Mr. Reimer's opinion is that these rates, from mid-2009, are "wholly reasonable and, if anything, well below current market rates" See the Reimer Declaration at ¶ 18. Indeed, it was Mr. Reimer's client who was the recipient of the award referenced above, ordered by Judge Sullivan, where Mr. Reimer's rate of $560 per hour was used for the award. See Zoller v. INA Life Insurance Company of New York, et al., No. 06-cv-112 (RJS) at Docket Entry Nos. 99 and 84.

**Time Expended on this Matter**

15.     The total number of hours expended to date on this matter, by the attorneys noted above (including paralegal time) has been 928.00 hours.

16.     The time records were kept contemporaneously during the five years that this litigation progressed. The complete details, including every entry by every attorney and paralegal, is annexed hereto as Exhibit C. For the Court's convenience, there is a cover sheet summarizing the time, by category, which reveals the following breakdown:

6

| Category | Total Hours – Per Category |
|---|---|
| **Pleadings** [review, strategy, drafting responses, analysis, and communications regarding same] | 11.50 |
| **Settlement Efforts** [meetings, consultations with client, communications with adversary, communications with court and mediator, preparation for mediation sessions, review of documents and communications regarding same for mediation purposes, and negotiations and discussions during formal mediation sessions and thereafter] | 87.25 |
| **Discovery** [Review and analysis of document requests, deposition requests, interrogatories, requests for admissions, and subpoenas served by GHI; strategy regarding same; communications with adversary, the court and client regarding disputes; court conferences in state court prior to removal regarding same; drafting of responses and negotiations regarding same; propounded document requests, interrogatories, and deposition notices to GHI and communications with adversary regarding same; review and analysis of materials and information produced; conducted / defended seven (7) depositions] | 261.25 |
| **Motions** [legal research, strategy, conferences, review and analysis of arguments, and drafting and editing regarding GHI's motion to remand, GHI's motion for summary judgment, and Village Fuel's motion for summary judgment against GHI] | 341.25 |
| **Court Conferences / Oral Arguments** [preparation, consultations with client; communications with court, client, and GHI regarding logistics for conferences regarding status, oral arguments regarding motions, and post summary judgment and pre-trial issues] | 148.25 |
| **Miscellaneous** | 8.75 |
| **Legal Fee Motion** [legal research, evaluation of issues, strategy conferences, communications with client and the court, drafting of pre-motion conference correspondence, oral argument at pre-motion conference; drafting of brief, declarations and review and analysis of supporting materials regarding same] | 69.75 |
| **Total** | 928.00 |

7

17.     There were disbursements expended by village Fuel in this matter in the sum of $12,141.19, for items such as deposition transcripts, online research fees, travel expenses, and overnight delivery charges (see Exhibit D).

18.     The amount of hours expended was reasonable and necessary to defend this case. The issues were myriad and complex, GHI pushed and forged ahead at every turn, and litigated every issue that it could possibly litigate. It must be noted that while the caption indicates that the employee, Nicholas Scarangella, was the Plaintiff, the caption is from a separate case commenced by Nicholas Scarangella to preserve his rights under the health insurance plan prior to the expiration of his 2-year contractual statute of limitations. This action had been originally commenced by GHI in Supreme Court, New York County, solely against Village Fuel, and then removed by Village Fuel to this Court. At the oral argument on the remand motion filed by GHI, Judge Karas obtained agreement for all parties to plead their claims within the context of the separate action filed by Nicholas Scarangella. The GHI-initiated action was then dismissed. Thus, the litigation originally commenced and driven throughout by GHI, proceeded under the above caption.

19.     All of the work performed on behalf of Village Fuel was in response to the action commenced against it by GHI and was directed toward trying to convince GHI to settle the case, to dispute its allegations of "fraud" against Village Fuel, and to assert the rights of Village Fuel and its employees under ERISA.

20.     Indeed , over eighty-seven (87.25) hours were spent attempting to settle this case, all driven by Village Fuel. We invoked the court's rules and requested that Judge Karas (previously assigned) employ the mediation program. We worked with the mediator and the mediation office

8

to schedule and conduct follow up sessions, all to no avail. In fact, we repeatedly warned counsel for GHI that they could not obtain the relief they sought, i.e., a monetary award against Village Fuel, based upon the Supreme Court precedent regarding equitable vs. legal relief. Moreover, Your Declarant repeatedly indicated to GHI, both to its outside counsel and in-house counsel representative, that there was never any fraudulent conduct on Village Fuel's behalf. Despite these warnings and indications, GHI insisted that Village Fuel was a "fraud" and that it should pay the bulk of the approximate $400,000 of health insurance claims of its employee, rather than GHI. Notably, GHI ultimately, after refusing to acknowledge these warnings and indications, dropped the case completely against Village Fuel and paid 100% of all of the health insurance claims outstanding against Nicholas Scarangella's wife, including Mr. Scarangella's claim for ERISA attorney's fees. Thus, the many hundreds of hours of time expended after the mediation process broke down was all due to GHI's intransigence and litigious activity.

21. Some of Village Fuel's efforts were geared toward assisting Nicholas Scarangella, Village Fuel's employee, in his dispute with GHI. That dispute was caused by GHI's wholly improper denials of the health insurance claims filed on behalf of Nicholas Scaranella's wife. There was virtually no litigation activity between Nicholas Scarangella and Village Fuel (we attended Nicholas Scarangella's deposition).

22. Due to some of the inherent overlap that may exist between work by a team of attorneys on a case and some of the inefficiencies that may occur from time to time, Village Fuel offers to voluntarily reduce the total fee claim by an across-the-board cut of ten per cent (10%). This reduction is made to assist the Court in reaching a determination, but is not an admission that there has been any such overlap or inefficiency. In addition, while the law is clear that current rates are

9

to be used for the reasonable fee calculation [see village Fuel's Memorandum of Law at p.21], in order to accentuate the reasonableness of Village Fuel on this motion, it will only request the use of the older, mid-2009 rates for purposes of the fee calculation for the amount requested as an award herein.

23. The total value of the time reflected on the last page of the time record, using the older, mid-2009 hourly rates, is $324,081.25. After a 10% reduction, the claim herein amounts to $291,673.13. Accordingly, Village Fuel hereby requests an award of $291,673.13, plus disbursements in the amount of $ 12,141.19.

24. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____/s/_____
RICHARD J. QUADRINO

Dated:     Garden City, New York
           December 15, 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
NICHOLAS SCARANGELLA,

                    Plaintiff,

-against-

GROUP HEALTH INC. and SCARANGELLA &
SONS, INC. d/b/a VILLAGE FUEL, as
Administrator of the VILLAGE FUEL EMPLOYEE
BENEFITS PLAN,

                    Defendants.
-----------------------------------------------------------X

Civil Action No.:
05 CV 5298 (RJS) (RLE)

DECLARATION OF
SCOTT M. RIEMER

SCOTT M. RIEMER, an attorney admitted to practice before this Court declares pursuant to 28 U.S.C. §1746, under penalties of perjury that the following is true and correct:

1. I am the principal of Riemer & Associates LLC, located at 60 East 42nd Street, Suite 2430, New York, New York 10165. I make this affirmation in support of the application of Quadrino & Schwartz, P.C., for attorney's fees and costs in the above-referenced action.

2. I am a 1983 graduate of the University of Michigan Law School. I am an attorney in good standing admitted to practice in the State of New York, the Southern District of New York, the Eastern District of New York, the Court of Appeals for the Second Circuit, and the Supreme Court of the United States of America.

3. In 1994, I started my own practice, concentrating almost exclusively in the area of ERISA litigation, particularly claims for long term disability benefits. In 2005, I founded the law firm of Riemer & Associates LLC (the "Firm"). The Firm generally employs one associate and two paralegals.

1

4. From the Spring of 1989 through the Fall of 1993, I was an associate in the litigation department of Schoeman, Marsh & Updike. At SM&U, I litigated cases in both New York State and the federal courts. My litigation experience included tort, products liability, ERISA and admiralty cases.

5. From Spring of 1985 through Spring of 1989, I was an associate in the employee benefits department of Patterson, Belknap, Webb & Tyler. At PBW&T, I advised corporate clients in all aspects of employee benefit plan design, structuring, administration, and compliance with ERISA and the Internal Revenue Code. In total, I drafted more than 50 pension, profit-sharing and 401(k) plans.

6. From Spring of 1984 through Spring of 1985, I was an associate with Gould & Wilkie, a small general practice firm.

7. I have represented well over 300 claimants in complex claims under ERISA. I have appealed several cutting-edge ERISA cases to the Second Circuit:

*Winkler v. MetLife*, 2006 U.S. App. LEXIS 5447 (2d Cir. 2006)

*Langman v. Laub*, 328 F.3d 68 (2d Cir. 2003);

*Dunnigan v. MetLife*, 277 F.3d 223 (2d Cir. 2002); and

*Juliano v. The Health Maintenance Organization of New Jersey*, 221 F.3d 279 (2d Cir. 2000).

8. I have served as lead counsel in a 968-member ERISA class action in the Southern District of New York (*Wright, et. al. v. United States Trust Company of New York, et. al*, 95 Civ. 6035 (SHS) (settled in 1998 for $2.4 million).

9. On March 27, 2008, I co-authored an *amicus curiae* brief to the Supreme Court in the case of *MetLife v. Glenn* on behalf of the NYC Chapter of the National Multiple Sclerosis Society.

10. I have written the following articles concerning various aspects of ERISA:

"Top Ten Things That Employment Lawyers Should Know About Long Term Disability Insurance Claims," The New York Employee Advocate, Vol. 13, No. 5, July 2006.

"What to Do If Your Disability Benefits Are Denied," CFIDS Chronicle (Spring 2001);

"What to Do If You Become Disabled," CFIDS Chronicle (Winter 2001);

"HMO's Face a Post-Pegram World," New York Law Journal (July 13, 2000);

"Corporate Outsourcing and ERISA §510," New York Law Journal (June 27, 1997);

"What to Do When Denied Health or Disability Benefits," CFIDS Chronicle (Spring 1995);

"Jury Trials under ERISA," New York Law Journal (August 10, 1994); and

"Discretionary or Conditional Forms of Benefit," Journal of Pension Planning & Compliance (Fall 1986).

9. I have lectured on the following topics relating to the litigation of long term disability claims under ERISA:

"The Impact of MetLife v. Glenn on the Standard of Review and Discovery," at the 12th National Advanced Forum on Litigation Disability Insurance Claims, American Conference Institute, Boston, Massachusetts, on June 15, 2009;

"ERISA Benefit Litigation: From Pilot Life and Firestone to Glenn—Where are We Now," ALI-ABA, Live Video Webcast, December 2, 2008;

"MetLife v. Glenn," Panelist at the New York, New Jersey and Connecticut Regional Conference of the College of Labor & Employment Lawyers, November 3, 2008;

"A New Firestone Drill under ERISA: MetLife v. Glenn," Practicing Law Institute, Live Audio Webcast, July 17, 2008;

"Standard of Review in ERISA Litigation in Light of MetLife v. Glenn," at the 11th National Advanced Forum on Litigation Disability Insurance Claims, American Conference Institute, Boston, Massachusetts, on June 12, 2008;

"Long-Term Disability Benefits in Danger: Disturbing Trends and Dirty Tricks" at Special Workshop on Long Term Disability Benefits, Friends in Deed, New York, New York, on October 24, 2007;

"Developments in ERISA Claims Handling and Litigation" at the 10th National Advanced Forum on Litigation Disability Insurance Claims, American Conference Institute, Boston, Massachusetts, on June 7, 2007;

"Litigating ERISA Disability Claims: Applicability, Discovery and Other Critical Issues" at the 9th National Advance Forum on Litigating Disability Insurance Claims, American Conference Institute, Miami, Florida, on February 23, 2006;

"Short Term and Long Term Disability Benefits" Lorman Education Services, April 19, 2001;

"Fiduciary Issues For Welfare Plans" NYSBA Labor and Employment Section, March 16, 2001; and

"Procedural Aspects of Litigating Benefit Claims" at the National Employment Lawyers Association/New York Spring Conference (April 1996).

10. In the past, I served as a member of the ERISA and Insurance Law panels of the Legal Referral Service of the Association of the Bar of the City of New York.

11. I have been selected as a SuperLawyer in the area of employee benefits law for the last four years. I am often quoted as an ERISA litigation expert in numerous publications including BNA Pension Reporter, Newsday, Consumers Digest and Lawyers Weekly USA.

12. I author and maintain a widely viewed website named www.disabilityclaims.com, which provides readers with practical information on disability insurance claims under ERISA. Last year, more than 10,000 individuals visited the website. I also maintain a blog on long term disability insurance issues named

www.longtermdisabilitylawblog.com. The blog discusses practice tips for long term disability attorneys and claimants.

13. At the January 12, 2009 annual meeting of the NYC Chapter of the National Multiple Sclerosis Society, I was awarded with the Chapter's Public Education Award. The award honored my volunteer services for Chapter members and my *pro bono* efforts to make the procedures used for long-term disability insurance more equitable for those disabled with multiple sclerosis. I also have been awarded a Certificate of Recognition for pro bono services on behalf of cancer patients from the Robert B. McKay Community Outreach Law Program of the Association of the Bar of the City of New York.

14. In October 2000, my client and I were the recipients of the Courageous Plaintiff Award presented by the National Employment Lawyers Association of New York. The award was for *Juliano v. The Health Maintenance Organization of New Jersey*, 221 F.3d 279 (2d Cir. 2000), which is an important legal precedent in the area ERISA litigation, cited as authority in 150 federal court decisions. The case also resulted in the award of attorney fees totaling $745,857.00.

15. The hourly rates that the Firm charges to all of our hourly clients are as follows: $560 for Scott M. Riemer; $340 for associates; and $190 for paralegals.

16. I consider Richard Quadrino and Evan Schwartz to be peers with abilities and experience commensurate with my own.

17. I have known Richard Quadrino and Evan Schwartz for several years and before becoming acquainted with them personally, I knew of their excellent national reputation in the field of private and ERISA governed long term disability litigation.

18. I believe their hourly rates of $450 for Messrs. Quadrino and Schwartz and from $325 to $350 for junior partners and other experienced counsel are wholly reasonable and, if anything, well below current market rates.

19. I have no financial interest in the outcome of this case. I am not being paid for submission of this affirmation.

Dated: New York, New York
       July 10, 2009

/s/ Scott M. Riemer
SCOTT M. RIEMER (SR5005)