Pierorazio v. Thalle Const. Co., Inc., Not Reported in F.Supp.3d (2014)
2014 WL 3887185

Case 1:05-cv-05208-RJS   Document 181-2   Filed 07/13/15   Page 1 of 5

2014 WL 3887185
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Joseph PIERORAZIO, Plaintiff,

v.

THALLE CONSTRUCTION
COMPANY, INC., Defendant.

No. 13 CV 4500(VB).   |   Signed June 26, 2014.

### MEMORANDUM DECISION

BRICCETTI, District Judge.

**\*1** Plaintiff Joseph Pierorazio sued defendant Thalle Construction Company, Inc., under the Employee Retirement Income Security Act ("ERISA"), for failing to pay accrued benefits under a deferred compensation plan. On December 3, 2013, the parties submitted a stipulation of settlement, which was "so ordered" by the Court, and the case was closed.

Plaintiff thereafter moved for an award of attorney's fees and costs, pursuant to 29 U.S.C. § 1132(g)(1).

For the reasons set forth below, plaintiff's motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### BACKGROUND

The complaint, stipulation of settlement, and the parties' moving papers reflect the following factual background.

Plaintiff was employed by defendant from June 21, 1976, to June 16, 2001. In May 1984, plaintiff enrolled in a deferred compensation plan offered by defendant (the "Plan"), the terms of which were set forth in a written agreement (the "Agreement"). [1]

Under the Plan, plaintiff was to receive an amount based on "the average of the final five (5) years of his compensation," which would be calculated using an "integrated formula." [2] These payments were to be made in "120 equal consecutive monthly installments," beginning in October 2012, the month after plaintiff turned 65 years old. Plaintiff alleges-and defendant does not appear to dispute-that the application of the "integrated formula" to his final five-year compensation average of $100,340.61 yields a monthly payment of $3,135.64.

Nevertheless, plaintiff contends, defendant "failed and refused" to make these monthly installment payments when they came due. Compl. ¶ 17. In February 2013, plaintiff's counsel informed defendant it was in default of its payment obligations to plaintiff. Later that month, defendant replied it was "reviewing [plaintiff's] deferred compensation" and would "contact [counsel] accordingly." Compl. ¶ 19.

In April 2013, defendant wrote plaintiff's counsel, stating it "would pay [plaintiff] $725.40 per month in deferred compensation for 120 months." Compl. ¶ 20. Plaintiff's counsel objected that this sum fell far short of the $3,135.64 defendant was obligated to pay under the Plan. Apparently unpersuaded, defendant began issuing plaintiff checks at the lower rate of $725.40 per month. [3] Plaintiff "endorsed and deposited" these checks, while reserving his right to receive the unpaid difference. Compl. ¶ 24.

On June 28, 2013, plaintiff commenced this action, seeking (i) damages, attorney's fees, and costs in connection with defendant's failure to make full and timely payment under the Plan, and (ii) a declaratory judgment that plaintiff is "entitled to 120 monthly payments of $3,135.64 in deferred compensation commencing on October 1, 2012, and continuing thereafter for an additional 119 months," and directing defendant to make payment accordingly.

Almost immediately after the filing of the complaint, the parties began negotiating a settlement. In late 2013, the parties submitted a stipulation of settlement in which defendant "acknowledge[d] its obligation to make deferred compensation payments to plaintiff ... as alleged in [his] [c]omplaint."(Doc. # 14). In addition, defendant agreed to pay plaintiff (i) a lump-sum of $33,301, representing unpaid arrears for the period between October 1, 2012, and November 1, 2013, and (ii) "the sum of $3,104 per month" for the remaining 107 months of the Plan. (*Id.*) The parties' stipulation became an Order of the Court on December 3, 2013, and the case was closed. (*See id.*).

Pierorazio v. Abele Tractor & Equip. Co., Inc., Not Reported in F.Supp.3d (2014)
2014 WL 3887185

Case 1:13-cv-05208-RJS Document 181-2 Filed 07/13/15 Page 2 of 5

**\*2** On December 5, 2013, plaintiff filed the instant motion for statutory attorney's fees under ERISA, see 29 U.S.C. § 1132(g)(1), offering three principal arguments in support: first, that plaintiff's status as the "prevailing party" in this dispute entitles him to a fee award; second, that application of the five *"Chambless* factors," used by courts in this Circuit to channel judicial discretion in awarding attorney's fees, likewise supports a fee award, *see Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 871 (2d Cir.1987); and third, that the filing of this lawsuit was a "catalyst" or "substantial factor" in persuading defendant to honor its obligations to plaintiff under the Plan.

Defendant opposes this motion, arguing "a telephone call" from plaintiff's counsel "would have been sufficient" to resolve this dispute, without resort to litigation. In addition, defense counsel argues there is no need to deter his client from "acting similarly against other employees," as defendant is honoring its commitments under the Plan to all its enrolled employees.

**DISCUSSION**

**I. *Legal Standard***
ERISA's fee-shifting provision allows the Court, "in its discretion," to award "a reasonable attorney's fee and costs of action to either party."29 U.S.C. § 1132(g)(1).

Under this provision, a claimant need only demonstrate "some degree of success on the merits" to establish his entitlement to a fee award. *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 255, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (internal quotation marks omitted); see also *Donachie v. Liberty Life Assurance Co. of Bos.,* 745 F.3d 41, 46 (2d Cir.2014) (After *Hardt,*"whether a [claimant] has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion."). Such a showing requires more than "trivial success on the merits or a purely procedural victor[y]," but does not entail a "lengthy inquir[y]" into "whether a particular party's success was 'substantial' or occurred on a 'central issue.' " *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. at 255 (alterations in original) (internal quotation marks omitted).

Although a district court may award fees upon a showing of some degree of success on the merits, the Court is not required to do so "simply because this pre-condition has been met."*Toussaint v. JJ Weiser, Inc.,* 648 F.3d 108, 110 (2d Cir.2011) (per curiam). Rather, a court may-but need not-consider five additional factors "to structure its analysis." *See id.;Scarangella v. Grp. Health, Inc.,* 731 F.3d 146, 152 (2d Cir.2013) (noting *Hardt*"permitted the use of the five-factor tests adopted by most Circuit Courts of Appeals to channel discretion in awarding reasonable fees to eligible parties, but held that courts were not required to use them"). These five *"Chambless* factors" are:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

**\*3** *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d at 871.

**II. *Some Degree of Success on the Merits***
There is no question the stipulation of settlement, now an Order of the Court, provides plaintiff with all or substantially all of the relief sought in the complaint.

First, the settlement provides for $33,301 in arrears, representing a retroactive supplement of $2,561.62 per month for the 13–month period from October 1, 2012, to November 1, 2013. Together with the $725.40 monthly installments already paid, these arrears raise plaintiff's retroactive compensation to $3,287.02 per month. And defendant will continue to make monthly payments to plaintiff, in the amount of $3,104, for the remaining 107 months of the Plan.

Second, in declaring the parties' rights and obligations under the Plan, the settlement mirrors the language of the complaint. Specifically, defendant "acknowledges its obligation" to make 120 monthly payments to plaintiff "as alleged in [plaintiff's] [c]omplaint" and "pursuant thereto," in substantially the sum demanded.

Having thus received in the settlement substantially all of the relief sought in the complaint, plaintiff can easily claim "some degree of success on the merits."Accordingly, plaintiff

Pierorazio v. Isabella Geriatric Ctr., Not Reported in F.Supp.3d (2014)
Case 1:05-cv-05201-RJS Document 181-2 Filed 07/13/15 Page 3 of 5
2014 WL 3887185

has demonstrated his entitlement to an award of attorney's fees. *See Taaffe v. Life Ins. Co. of N. Am.,* 769 F.Supp.2d 530, 542 (S.D.N.Y.2011) (finding settling plaintiff achieved "more than 'some success on the merits' because [defendant] has provided [plaintiff] with everything she demanded in her complaint"); *Hackett v. Standard Ins. Co.,* 2010 WL 5068098, at *3–4 (D.S.D. Dec.7, 2010) (plaintiff's having obtained through settlement the monetary and declaratory relief sought in her complaint was "a complete victory" and was more than adequate to demonstrate "some success on the merits").

### III. *Application of the Chambless Factors*
As the parties addressed the *Chambless* factors at length in their briefing, it is appropriate for the Court to do so here.

To reiterate, courts "retain discretion" to consider the *Chambless* factors in determining whether to grant an eligible plaintiff's request for attorney's fees. *Donachie v. Liberty Life Assurance Co. of Bos.,* 745 F.3d at 46. This discretion is bounded only by the Second Circuit's admonition that the district court "deploy that useful framework in a manner consistent with our case law." *Id.* at 47. Thus, although the Court may not "selectively consider some factors while ignoring others," *id.,* it remains free to focus on those factors most relevant to the facts before it. See, e.g., *Toussaint v. JJ Weiser, Inc.,* 648 F.3d at 111 ("focus[ing] on the first *Chambless* factor").

Although no one *Chambless* factor is dispositive, courts place particular emphasis on the first and fourth factors-the culpability of the offending party, and the relative merits of the parties' positions. *SeeDonachie v. Liberty Life Assurance Co. of Bos.,* 745 F.3d at 47 ("[W]hile the degree of culpability and the relative merits are not dispositive under the *Chambless* fivefactor test, they do weigh heavily." (internal quotation marks omitted)).

**\*4** This case turns on the first, third, and fourth factors, all of which weigh in favor of plaintiff. [4]

### A. *Culpability*
The first factor examines "the degree of the offending party's culpability or bad faith." *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d at 871.

"[T]he concepts of 'bad faith' and 'culpability' are distinct, and either one may satisfy the first *Chambless*

factor." *Donachie v. Liberty Life Assurance Co. of Bos.,* 745 F.3d at 47. " '[A] finding of culpability involves more than mere negligence, but does not require malice or an ulterior motive.' " *Demonchaux v. Unitedhealthcare Oxford.* 2014 WL 1273772, at *4 (S.D.N.Y. Mar.27, 2014) (alteration in original) (internal quotation marks omitted). "[A] defendant is culpable under *Chambless* where it violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate." *Locher v. Unum Life Ins. Co. of Am.,* 389 F.3d 288, 299 (2d Cir.2004) (internal quotation marks omitted).

Here, defendant failed to pay compensation of any kind from October 1, 2012, until April 9, 2013, when it finally offered plaintiff only a fraction of what it owed. Defendant then continued to ignore plaintiff's demand for full payment until the filing of the complaint in June 2013, after which defense counsel called plaintiff's counsel, expressing his intent to investigate plaintiff's allegations and his desire to settle the case. From this point, it would take an additional five months of negotiations before defendant "finally relented." Reply Aff. ¶ 3.

Having thus resisted its obligations to plaintiff for well over a year, defendant demonstrated more than mere negligence in its administration of the Plan. Accordingly, the Court deems its conduct to have been culpable. *See Juliano v. Health Maint. Org. of N.J., Inc.,* 2001 U.S. Dist. LEXIS 17140, at *5–7 (S.D.N.Y. Sept. 24, 2001) (finding defendant's "intransigence," which "hindered resolution of the dispute," to be "culpable").

### B. *Deterrence*
The third factor examines the deterrent effect of an attorney's fee award.

Defendant argues there is no cause for the Court to deter it from violating ERISA, as it no longer offers the Plan and is fulfilling its obligations thereunder to the few remaining enrollees.

This argument is misdirected.

As a practical matter, how defendant administers a deferred compensation plan it ceased offering in the 1980's offers little insight into how it administers the 401(k) plan that replaced it. Indeed, as plaintiff argues, defendant may well "understand from an award of attorneys' fees entered in this case that it

cannot treat [other] employees as it treated" plaintiff. Reply Aff. ¶ 5.

More fundamentally, however, the third factor-"whether an award of fees would deter *other* persons from acting similarly under like circumstances,"*Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d at 871 (emphasis added)-centers not on *defendant's* culpability, but on the potential misconduct of its peers.

 **\*5** Here, an award of attorney's fees may well deter defendant's peers from similarly disregarding their employees' meritorious claims for unpaid retirement benefits.

### C. *Relative Merits*
The fourth factor is "the relative merits of the parties' positions."*Id.*

Having abandoned its earlier position and "acknowledge[d] its obligation" to plaintiff as set forth in the complaint, defendant essentially concedes the merits of plaintiff's position. Thus, there is no dispute plaintiff's position is meritorious.

Accordingly, the application of the *Chambless* factors supports an award of attorney's fees here.

### IV. *Policy Concerns*
Finally, awarding plaintiff his attorney's fees in this case is in keeping with the policy purposes of ERISA.

ERISA's attorney's fees provisions are to be "liberally construed" to advance the "statutory purpose of vindicating retirement rights," and awarding attorney's fees to worthy claimants such as plaintiff, who have demonstrated some degree of success on the merits, is "appropriate absent some particular justification for not doing so."*Donachie v. Liberty Life Assurance Co. of Bos.,* 745 F.3d at 46–47 (internal quotation marks omitted).

To the extent defendant argues the settlement of this case in the absence of Court intervention provides such a justification for not doing so, the Court disagrees.

Just last year, the Second Circuit declined to "create an extra-statutory rule requiring success be obtained only by court order," reasoning such a rule could create a perverse incentive against settlement. *Scarangella v. Grp. Health, Inc.,* 731

F.3d at 155. In a similar context, another court declined to distinguish "success on the merits" from "purely procedural victories" based on "the means by which a party achieves a particular result," reasoning such an approach "would allow insurers to circumvent too easily ERISA's statutory purpose ... by citing a reason unrelated to the litigation why it allegedly had settled."*Taaffe v. Life Ins. Co. of N. Am.,* 769 F.Supp.2d at 541.

In sum, plaintiff has established his entitlement to a fee award by demonstrating some degree of success on the merits-a result which finds additional support in the *Chambless* factors and relevant policy considerations. [5]

### V. *Reasonableness of Attorney's Fees*
As to the reasonableness of the requested fees, it is plaintiff's burden to show "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."*Blum v. Stenson,* 465 U.S. 886, 896 n. 1 1 (1984); *Stewart v. Barclay's Bus. Credit, Inc.,* 860 F.Supp. 150, 150 (S.D.N.Y.1994) (observing the "time honored practice" of using New York City rates to calculate attorney's fees in the district, regardless of courthouse).

To determine the amount of reasonable attorney's fees, the Second Circuit follows a "presumptively reasonable fee" approach. *See Simmons v. N.Y.C. Transit Auth.,* 575 F.3d 170, 172 (2d Cir.2009). Using that method, the Court considers all case-specific variables relevant to setting a reasonable hourly rate, including what a "paying client would be willing to pay,"*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 184 (2d Cir.2008) and the following factors:

 **\*6** (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of

the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n. 3 (citation omitted). The Court then multiplies that hourly rate by the reasonable number of hours expended-the lodestar-to arrive at a fee award that is "presumptively reasonable ." *Id.* at 183; see *Millea v. Metro–North R.R.,* 658 F.3d 154, 166 (2d Cir.2011) (citation omitted). In the rare case, the Court may adjust the lodestar when it "does not adequately take into account a factor" properly considered in determining the fee. *Id.* at 167.

Here, plaintiff's four attorneys billed a total of 69 hours. Phillip M. Halpern received a Juris Doctor from Pace University School of Law in 1980 and billed an hourly rate of $495, for a total of 9.1 hours. Scott M. Salant received a Juris Doctor from Boston University in 1989 and billed an hourly rate of $375, for a total of 50 hours. Efrem Z. Fischer received a Juris Doctor from Benjamin N. Cardozo School of Law, Yeshiva University, in 1996 and billed an hourly rate of $310, for a total of 8.9 hours. Shari B. Hochberg received a Juris Doctor from Pace University School of Law in 2012 and billed an hourly rate of $185, for a total of 1 hour.

Although this case was not unusually complex, it appears to have required significant effort by plaintiff's attorneys-

particularly Mr. Salant-who are experienced, competent, and professional, and who secured a settlement substantially in plaintiff's favor. The hourly rates charged and the number of hours expended in this case are clearly reasonable. Defendant's request for a hearing regarding fees and costs is therefore denied as unnecessary.

Accordingly, the Court awards plaintiff attorney's fees in the amount of $26,198.50, plus costs of $1,231.51, for a total of $27,430.01.

## CONCLUSION

Plaintiff's motion for attorney's fees is GRANTED, and plaintiff is awarded a total of $27,430.01. By no later than July 25, 2014, defendant is ORDERED to pay that amount to plaintiff in full.

The Clerk is instructed to terminate the pending motion. (Doc. # 15).

SO ORDERED:

**All Citations**

Slip Copy, 2014 WL 3887185

---

Footnotes

1    Although the complaint and the parties' submissions reference this "Agreement," it has not been filed on the docket nor made an exhibit to any filing in this case.

2    According to the complaint, "[t]he 'integrated formula' referenced in the Agreement consists of dividing [plaintiff's] final five (5) years of his compensation by five (5) to determine the yearly average, which is then divided by twelve (12) to convert this yearly amount to a monthly amount, then multiplying this amount by 60%, and then multiplying again (in [plaintiff's] case) by 62.5%. This 62.5% figure is derived from Exhibit B of the Agreement, which provides for a 62.5% figure based upon [plaintiff's] 25 years of service at Thalle (10 years = 25%, additional 15 years = 37.5%, total = 62.5%)." Compl. ¶ 14.

3    The first of these, in the amount of $4,352, was dated March 12, 2013. According to the complaint, this check represented a lump-sum payment of the six past-due monthly installments at the rate of approximately $725 per month.

4    Having carefully considered all of the *Chambless* factors, the Court concludes the second and fifth factors do not clearly favor either party.

5    As this case was resolved in the absence of judicial intervention, it is not susceptible to analysis under the "catalyst" theory, which is a "means of showing that *judicial action* in some way spurred one party to provide another party with relief." *Scarangella v. Grp. Health, Inc.,* 731 F.3d at 155 (emphasis added). Accordingly, the Court declines to address plaintiff's catalyst theory argument.

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.