Case 1:05-cv-05298-RJS-RLE Document 181-3 Filed 07/13/15 Page 1 of 12
Gross v. Sun Life Assur. Co. of Canada, 763 F.3d 73 (2014)
58 Employee Benefits Cas. 2433

763 F.3d 73
United States Court of Appeals,
First Circuit.

Diahann L. GROSS, Plaintiff, Appellant,
v.
SUN LIFE ASSURANCE COMPANY
OF CANADA, Defendant, Appellee.

No. 12–1175.  |  Aug. 14, 2014.

**Synopsis**
**Background:** Participant in long term disability plan governed by Employee Retirement Income Security Act (ERISA) filed state court action challenging claims administrator's denial of her claim for benefits. After removal, the United States District Court for the District of Massachusetts, Rya W. Zobel, J., 2012 WL 29061, entered judgment in administrator's favor, and participant appealed. After the Court of Appeals, 734 F.3d 1, ruled that highly deferential "arbitrary and capricious" standard of review did not apply to certain benefits decisions and remanded matter for further proceedings, participant moved for attorney fees and costs.

**Holdings:** The Court of Appeals, Lipez, Circuit Judge, held that:

[1] remand to administrator was sufficient success on merits to establish participant's eligibility for fees;

[2] participant's motion for attorney fees was ripe for adjudication; and

[3] participant was entitled to attorney fee award.

Motion granted and matter remitted.

Selya, Circuit Judge, dissented and filed opinion.

West Headnotes (4)

[1]  **Labor and Employment**
    🐝 Actions to recover benefits

Remand to claims administrator for review of plan participant's entitlement to benefits under long term disability plan was sufficient success on merits to establish participant's eligibility for attorney fees under ERISA's fee-shifting provision, even though court refrained from expressing any view on ultimate merits of her claim, where court had ruled that highly deferential "arbitrary and capricious" standard of review did not apply to certain benefits decisions, which strengthened participant's claim and increased likelihood of favorable benefits determination by claims administrator, and would impact all similar future claims. Employee Retirement Income Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1).

1 Cases that cite this headnote

[2]  **Federal Courts**
    🐝 Pension and benefit plans

Plan participant's motion for attorney fees pursuant to ERISA's fee-shifting provision was ripe for adjudication, even though her benefits claim had not yet been decided, and participant might seek additional fee awards in future, where Court of Appeals had ruled that highly deferential "arbitrary and capricious" standard of review did not apply to certain benefits decisions, and remanded for reconsideration of her entitlement to benefits under less deferential standard of review, and Court of Appeals' judgment was final. Employee Retirement Income Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1).

Cases that cite this headnote

[3]  **Labor and Employment**
    🐝 Factors considered in general

In evaluating request for attorney fees pursuant to ERISA's fee-shifting provision, court should consider: (1) degree of culpability or bad faith attributable to losing party; (2) depth of losing party's pocket, i.e., his or her capacity to pay award; (3) extent, if at all, to which such award would deter other persons acting under similar circumstances; (4) benefit, if any, that

successful suit confers on plan participants or beneficiaries generally; and (5) relative merit of parties' positions. Employee Retirement Income Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1).

Cases that cite this headnote

[4] **Labor and Employment**
⮕ Actions to recover benefits

Plan participant was entitled to attorney fee award pursuant to ERISA's fee-shifting provision after Court of Appeals ruled that highly deferential "arbitrary and capricious" standard of review did not apply to certain benefits decisions, and remanded for reconsideration of her entitlement to benefits under less deferential standard of review, even though participant had not yet established right to benefits, where claims administrator had relied on medical judgments it knew were reached with incomplete information, award of fees might have desirable deterrent effect by demonstrating that excessive hostility to claims involving subjective symptoms was ill-advised, and participant's success would benefit all claimants. Employee Retirement Income Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1).

2 Cases that cite this headnote

**Attorneys and Law Firms**

*74 Michael D. Grabhorn, with whom Jonathan M. Feigenbaum and Grabhorn Law Office, PLLC were on brief, for appellant.

*75 Joshua Bachrach, with whom Wilson, Elser, Moskowitz, Edelman & Dicker LLP was on brief, for appellee.

Before THOMPSON, SELYA, and LIPEZ, Circuit Judges.

**Opinion**

LIPEZ, Circuit Judge.

In previously deciding the merits of this case brought under the Employees Retirement Income Security Act of 1974 ("ERISA"), we agreed with plaintiff Diahann Gross that our circuit should no longer apply the highly deferential "arbitrary and capricious" standard of review to certain benefits decisions. *See Gross v. Sun Life Assurance Co. of Can.,* 734 F.3d 1, 16 (1st Cir.2013). We also found the administrative record inadequate to permit our de novo judgment on Gross's entitlement to benefits. Accordingly, we remanded the matter for further proceedings. Gross now seeks an award of attorney's fees under 29 U.S.C. § 1132(g)(1) on the ground that she achieved "some degree of success on the merits." *See Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 245, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (quoting *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)). Appellee Sun Life Assurance Company of Canada contends that Gross is not entitled to attorney's fees and that, in any event, her request is premature.

We conclude that our prior decision afforded Gross a degree of success on the merits that qualifies her for an award of fees. Further, we find that such an award is both appropriate and properly ordered at this time. Hence, we remit Gross's fee request to the district court for a determination in the first instance of the proper amount of the award.

**I.**

**A. Factual Background**

We summarize the facts underlying Gross's disability claim only briefly here, as they are presented in detail in our earlier opinion. Gross was placed on disability leave at the age of 34 based on her complaints of severe pain, weakness, and numbness in her arms and legs, as well as recurring headaches. Her treating physician attributed the symptoms to various medical conditions, including fibromyalgia and reflex sympathetic dystrophy, and concluded that Gross was unable to work. In denying long-term disability benefits to Gross, Sun Life relied heavily on video surveillance that showed Gross engaged in activities that appeared inconsistent with her self-described physical limitations.

In her appeal to this court, Gross raised two substantial threshold questions concerning her claim for disability benefits. We rejected one—applicability of the so-called "safe harbor exception" to ERISA coverage—but agreed with Gross's assertion that policy language "requiring proof of disability 'satisfactory to us' is inadequate to confer the discretionary authority that would trigger deferential

Gross v. Sun Life Assur. Co. of Canada, 763 F.3d 73 (2014)
58 Employee Benefits Cas. 2433

Case 1:05-cv-05298-RJS-RLE Document 181-3    Filed 07/13/15    Page 3 of 12

review" of the insurer's benefits decision. 734 F.3d at 3. The latter holding departed from our holding a decade earlier in *Brigham v. Sun Life of Canada,* 317 F.3d 72 (1st Cir.2003), [1] and thus changed the law in this circuit governing policies with the "satisfactory to us" language. As directly applied to Gross's case, the decision withdrew from Sun Life the right to make a judgment about her eligibility for benefits *76 that is subject to review only for abuse of discretion.

We also concluded that the administrative record was "inadequate to allow a full and fair assessment of Gross's entitlement to disability benefits," and therefore remanded the case to allow further development of the evidence. 734 F.3d at 3–4. In so ruling, we faulted Sun Life for failing to provide its independent medical consultant with important background about Gross's circumstances on a critical surveillance day and for disregarding the consultant's observation that it " 'might be beneficial' " to reexamine Gross in light of the seeming inconsistencies between his prior evaluation and the surveillance. *Id.* at 26–27; *see also id.* at 27 ("Sun Life's handling of the inconsistencies between the medical reports and the video surveillance ... raises a legitimate question about whether Sun Life has made a bona fide effort to determine Gross's capabilities.").

At the same time, however, we recognized that Gross, despite her burden to prove disability, had not submitted a statement from her own doctor explaining why she was shown in the surveillance video performing activities that appeared beyond her self-reported capabilities. We therefore ordered a remand "so that the parties can further address both the significance of the video evidence in assessing Gross's limitations and the veracity of her self-reported and observed symptoms." *Id.* at 27–28.

Gross subsequently filed the motion that is now before us seeking an award of attorney's fees and costs for the litigation in the district court and on appeal. [2] As noted, Sun Life contends that Gross is not yet eligible for a fee award.

**B. Eligibility for Fee Award**

**(1) Legal Background**
Under ERISA, a court "in its discretion may allow a reasonable attorney's fee and costs of action to either party" in a benefits proceeding. 29 U.S.C. § 1132(g)(1). In *Hardt,* the Supreme Court clarified that eligibility for an award under section 1132(g)(1) does not require that the fee-seeker be a prevailing party, but only that the "claimant show[ ] 'some degree of success on the merits.' " *Gastronomical Workers Union Local 610 & Metro. Hotel Ass'n Pension Fund v. Dorado Beach Hotel Corp.,* 617 F.3d 54, 66 (1st Cir.2010) (quoting *Hardt,* 560 U.S. at 255, 130 S.Ct. 2149). [3] The favorable result must be more than a "trivial success" or "a purely procedural victory," but it is enough "if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.' " *Hardt,* 560 U.S. at 255, 130 S.Ct. 2149 (internal quotation marks omitted) (brackets omitted). [4] We have described *77 such success as a "merits outcome [that] produces some meaningful benefit for the fee-seeker." *Gastronomical Workers Union,* 617 F.3d at 66.

Importantly, the Supreme Court declined in *Hardt* to decide "whether a remand order, without more, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under § 1132(g)(1)." 560 U.S. at 256, 130 S.Ct. 2149. In *Hardt,* the claimant's success had three components: (1) a remand requiring a reevaluation of her claim, (2) the district court's expressed favorable view of that claim, with a warning that the court would grant judgment for the claimant if the plan administrator did not "adequately consider[ ] all the evidence within 30 days," *id.* (internal quotation mark omitted), and (3) an eventual award of benefits by the plan administrator. The Court characterized that combination as "far more" than trivial success. *Id.* We thus understand the Court to be saying that circumstances less favorable than Hardt's also would meet the requisite level of success.

The question to which we now turn is whether the particular circumstances of the remand in this case satisfy the *Hardt* standard.

**(2) Discussion**
Gross maintains that she is entitled to a fee award under *Hardt* because she proved that Sun Life "violated her fundamental ERISA rights" and she secured a change in the standard of review for policies containing the "satisfactory to us" language. Sun Life argues that a remand on its own does not constitute success "on the merits," and it asserts that our ruling on the standard of review "can only be considered a 'purely procedural victory' " that also does not justify a fee award.

Gross v. Sun Life Assur. Co. of Canada, 763 F.3d 73 (2014)
58 Employee Benefits Cas. 2433
Case 1:09-cv-05208-RJS-RLE Document 181-3    Filed 07/13/15    Page 4 of 12

Most courts considering the question left unanswered in *Hardt* have held that a remand to the plan administrator for review of a claimant's entitlement to benefits, even without guidance favoring an award of benefits or an actual grant of benefits, is sufficient success on the merits to establish eligibility for fees under section 1132(g)(1). *See, e.g., McKay v. Reliance Standard Life Ins. Co.,* 428 Fed.Appx. 537, 546–47 (6th Cir.2011); *Barnes v. AT & T Pension Benefit Plan–Nonbargained Program,* 963 F.Supp.2d 950, 962–63 (N.D.Cal.2013); *McCarthy v. Commerce Group, Inc.,* 831 F.Supp.2d 459, 463, 493 (D.Mass.2011); *Scott v. PNC Bank Corp. & Affiliates Long Term Disability Plan,* No. WDQ–09–3239, 2011 WL 2601569, at *7 (D.Md. June 28, 2011); *Olds v. Ret. Plan of Int'l Paper Co.,* No. 09–0192–WS–N, 2011 WL 2160264, at *2 (S.D.Ala. June 1, 2011) (citing cases); *cf. Petrone v. Long Term Disability Income Plan for Choices Eligible Emps. of Johnson & Johnson & Affiliated Cos.,* No. 11–10720–DPW, 2014 WL 1323751, at *2 & n. 1 (D.Mass. Mar. 31, 2014) (finding no need to decide whether "remand simpliciter" is enough, but noting that "the prevailing lower court wisdom appears to be that a remand of an ERISA challenge may trigger a fee award in favor of the plaintiff under § 1132(g)"); *but see, e.g., Adair v. El Pueblo Boys & Girls Ranch, Inc. Long Term Disability Plan,* No. 11–cv–02749–WYD–KLM, 2013 WL 4775927, at *22 (D.Colo. Sept. 5, 2013) (stating that plaintiff may renew her request for attorney's fees if she achieves success on remand); *McCollum v. Life Ins. Co. of N. Am.,* No. 10–11471, 2013 WL 308978, at *1 (E.D.Mich. Jan. 25, 2013) (holding that plaintiff "has not yet achieved any 'degree of success on the merits' " where case was remanded for "full and fair review of Plaintiff's claim for disability benefits"); *\*78 Vivas v. Hartford Life and Accident Ins. Co.,* No. 10–22992–CIV, 2013 WL 5226720, at *3 (S.D.Fla. June 17, 2013) (concluding that remand to the plan administrator "is a purely procedural victory that does not rise to *Hardt's* standard requiring a finding of 'some success on the merits' ").[5]

Among other factors, the courts concluding that remand simpliciter is enough have emphasized that a remand for further administrative proceedings commonly results from a substantive review of the evidence—i.e., "the court considers *the merits* of the case and reaches it[s] conclusion on that basis." *Scott,* 2011 WL 2601569, at *8 (emphasis added). Hence, these courts treat such a remand as sufficient "success" under *Hardt* based on the two positive outcomes inherent in such an order: (1) a finding that the administrative assessment of the claim was in some way deficient, and (2) the plaintiff's renewed opportunity to obtain benefits or compensation. *See, e.g., McKay,* 428 Fed.Appx. at 546–47; *Barnes,* 963 F.Supp.2d at 962; *Spradley v. Owens–Ill. Hourly Emps. Welfare Benefit Plan,* No. CIV–09–460–RAW, 2011 WL 209164, at *1 (E.D.Okla. Jan. 21, 2011); *Olds,* 2011 WL 2160264, at *3; *Bowers v. Hartford Life & Accident Ins. Co.,* No. 2:09–CV–290, 2010 WL 4117515, at *2 (S.D.Ohio Oct. 19, 2010).

As explained below, it is unnecessary for us to adopt a position on whether remand alone is enough to trigger fees eligibility. Nonetheless, we find the majority position persuasive. A remand to the claims administrator for reconsideration of benefits entitlement ordinarily will reflect the court's judgment that the plaintiff's claim is sufficiently meritorious that it must be reevaluated fairly and fully. *See* 29 U.S.C. § 1133(2) (stating that participants in ERISA benefit plans are entitled to "a full and fair review by the appropriate named fiduciary of the decision denying the claim"). Here, for example, we observed that Gross had submitted sufficient medical evidence that, "if credited, is adequate to prove [her] entitlement to disability benefits." 734 F.3d at 22. In complying with our remand instructions, the district court has now ordered Sun Life to render a new decision that includes reconsideration of videotape evidence that was not fairly examined during the original administrative process. *See* Case No. 1:09–cv–11678–RWZ, Dkt. 65 (Apr. 16, 2014).[6] The substance of the claim was thus a central concern in the appeal, and it will be the focus of the proceedings on remand.

To the extent Sun Life argues that an award of some amount of benefits is a necessary component of the success required by *Hardt,* we are unpersuaded. The Supreme Court easily could have identified *Hardt's* eventual benefits award as a condition of her entitlement to attorney's fees, but it did not do so. Hence, in our view, the Court's reservation of judgment about "a remand order, without more" cannot mean that the "more," in every case, must include the eventual receipt of benefits in some amount. Indeed, a remand for a second look at the merits of her benefits application is often the best outcome that a claimant can reasonably hope to achieve from the courts. To classify such success *79 as a minimal or "purely procedural victory" mistakes its importance.

Our dissenting colleague acknowledges that there "may" be a limited set of cases in which an ERISA claimant will be entitled to fees absent a benefits award—those where a court has explicitly found a violation of ERISA's substantive or procedural components—but he asserts that Supreme Court

precedent does not allow a more inclusive reach for section 1132(g)(1). There is no such prohibition in *Hardt* or any other Supreme Court case. To the contrary, the Court purposefully left open the scope of "some success on the merits," allowing the lower courts to give content to that requirement. Our colleague's conclusion that a remand without an award of benefits can suffice only if it remedies a violation of an explicit ERISA right elevates the outcome of certain cases to a bright-line rule that circumscribes unwisely the case-by-case development of "some success on the merits" contemplated by the Supreme Court.

Under *Hardt*, the question in each case is whether the claimant has achieved something more than trivial or procedural success. When an ERISA beneficiary has earned a second look at her claim based on a deficient first review, her success can be equally consequential whether or not the identified flaw is explicitly linked by the remanding court to a statute or regulation. The court's labeling of the claims administrator's conduct may be one appropriate factor to consider; it should not be the only one.

In this case, however, we need not finally resolve the adequacy of a "remand, without more," or the characteristics of a qualifying remand. As the Second Circuit has observed, "*Hardt* appears to have left room for many factual scenarios to satisfy the standard of some success on the merits." *Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 152 (2d Cir.2013). Like the plaintiff in *Hardt*, Gross obtained more than merely a second chance for "a full and fair review" of her claim by the plan administrator.

[1] Although we did not nudge Sun Life toward a decision in Gross's favor—indeed, we expressly refrained from expressing any view on the ultimate merits of her claim—we made a substantive ruling on the standard of review that altered the dynamic between Sun Life and Gross in the subsequent proceedings. Contrary to Sun Life's and our dissenting colleague's insistence, that legal decision had more than procedural impact. It increased the likelihood of a favorable benefits determination—perhaps from Sun Life, and certainly from a reviewing court in the event Gross's claim is again denied by the claims administrator—because Sun Life's judgment will no longer be insulated from full judicial review. In effect, the change in the standard of review has strengthened Gross's claim: "The very existence of 'rights' under such plans depends on the degree of discretion lodged in the administrator. The broader that discretion, the less solid an entitlement the employee has...." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir.2000). At a minimum, this outcome constitutes "some meaningful benefit for the fee-seeker," *Gastronomical Workers Union*, 617 F.3d at 66, and, hence, satisfies the *Hardt* standard of "some degree of success on the merits," *Hardt*, 560 U.S. at 255, 130 S.Ct. 2149 (internal quotation marks omitted).

Our colleague attempts to diminish the substantive import of Gross's standard-of-review success with a hypothetical that he says makes it "transparently clear that the plaintiff had not achieved anything resembling success on the merits." He contends that Gross plainly would have earned "no **\*80** more than a purely procedural victory" if we had applied the de novo standard of review ourselves, instead of remanding, and concluded that she is not entitled to benefits.

That contention is simply wrong. The fact that a claimant's success and the denial of benefits might be combined in a single decision does not change the quantum of success achieved and, hence, provides no reason to alter our approach. The question remains the same: what outcome, short of a receipt of benefits, constitutes the requisite success under *Hardt*? Contrary to our colleague's implication, there is nothing incongruous about rewarding only the successful portion of a mixed decision. We do it all the time in the context of attorney's fees. *See, e.g., Joyce v. Town of Dennis*, 720 F.3d 12, 31 (1st Cir.2013) (noting "the well established principle that a fees award should reflect the plaintiff's level of success"). Thus, even if we had reviewed the record ourselves and concluded that Gross is not entitled to disability benefits, we still would have found her eligible for a fee award based on the success she did achieve.

At the heart of our colleague's hypothetical is a suggestion that any decision that does not award benefits is merely procedural. To the same effect is his battle-and-war imagery, which concludes with the observation that "[s]urviving to fight another day is not the same as winning the war." Yet, he also appears to recognize that such a narrow conception of "some" success on the merits is incompatible with *Hardt*, where—as we have noted—the Court could have, but did not, condition fees on an award of benefits. He thus grudgingly acknowledges that certain "battle" victories may justify an award of fees.

Here, as we have explained, Gross secured a ruling on the standard of review that improved her likelihood of success on the merits of her claim and will impact all similar future claims. It thus provided—to borrow our colleague's

formulation for the requisite success—"some concrete gain for the claimant." As such, it is readily distinguishable from interim, "procedural" victories such as a favorable ruling on a discovery dispute or a motion to intervene. *Cf., e.g., Barnes,* 963 F.Supp.2d at 961 (noting that "winning a motion for class certification or a motion to intervene would constitute a purely procedural victory"); *Olds,* 2011 WL 2160264, at *3 n. 2 (giving as examples of procedural victories "favorable rulings on discovery disputes or motions in limine and orders disqualifying opposing counsel").

Our colleague's discrediting of the significance of the panel's standard-of-review ruling causes him to focus on our observations about the significance of a remand simpliciter. In so doing, he critiques a decision we did not make. Although we have favorably reviewed the rationales for awarding fees based solely on a claimant's success in obtaining a remand, our decision in this case does not rest on such rationales. Here, we have held that there is "more." Hence, our colleague necessarily rejects our outcome not because he disagrees with our thinking on whether a remand alone may justify a fee award, but because he rejects our conclusion that the panel's standard-of-review holding was a significant, substantive success for Gross. Yet, he offers little explanation for dismissing that holding as purely procedural. In effect, he concludes that her victory was procedural simply because it was not accompanied by an award of benefits.

In crediting Gross with non-trivial success on the merits, we do not mean to portray as entirely irrelevant the eventual outcome of her claim for benefits. That outcome will be a factor in any post-remand **\*81** request for fees, and it may be considered by the district court in considering a reasonable fee for the pre-remand legal work. While Gross's failure to achieve an award of benefits, either in this court or on remand, "may speak to the quantum of [her] success on the merits of [her] claim, ... it [would] not convert [her] substantial success on that claim into failure or trivial success." *Olds,* 2011 WL 2160264, at *3.

We thus hold that Gross is eligible for an award of fees under *Hardt.*

### C. Timing

[2] In its supplemental brief opposing Gross's motion for fees, Sun Life appears to argue that the fee request is premature because Gross's benefits claim is not yet fully decided: "Time will tell whether Ms. Gross is entitled to receive benefits. If, in the future, a court concludes that she is totally disabled, there is no question that the issue of eligibility for attorney's fees will be ripe." Our discussion above demonstrates that Sun Life's ripeness argument, relying in large part on the fact that no disability benefits have yet been awarded, is off the mark. As we have explained, the remand for reconsideration of her entitlement to benefits, in combination with a less deferential standard of review, means that Gross already has achieved the success that makes her eligible for fees. Our judgment in this appeal is now final,[7] and the outcome of the supplemental proceedings ordered by our remand will not change Gross's eligibility for fees for the phase of the case that concluded with that judgment. We therefore consider the fees issue "fit [ ] for adjudication." *Gastronomical Workers Union,* 617 F.3d at 61; *see also id.* ("Fitness involves questions about whether the necessary factual predicate is sufficiently matured to allow a court to resolve the issue presented.").[8]

In evaluating ripeness, we ordinarily also look to "whether a refusal to adjudicate **\*82** th[e] issue will work a hardship on the party who seeks a remedy." *Gastronomical Workers Union,* 617 F.3d at 61. Sun Life argues that Gross has not met this prong of the ripeness test because she has not argued that she will suffer hardship from a delay in consideration of her fees request. The fee issue itself, however, bespeaks a need for prompt resolution. Fee-shifting statutes are designed "to encourage the bringing of meritorious ... claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *Kerr v. Quinn,* 692 F.2d 875, 877 (2d Cir.1982), *quoted* in *Riverside v. Rivera,* 477 U.S. 561, 578, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (referring to attorney's fees in civil rights cases under 42 U.S.C. § 1988). ERISA's fee provisions, in particular, are intended "to encourage beneficiaries to enforce their statutory rights," *Donachie v. Liberty Life Ass. Co. of Boston,* 745 F.3d 41, 45–46 (2d Cir.2014) (internal quotation mark omitted), and "to encourage attorneys to take on such cases, which are often time consuming and complex," *Hanley v. Kodak Ret. Income Plan,* 663 F.Supp.2d 216, 219 (W.D.N.Y.2009). This case, for example, was removed to federal court in October 2009 after initial proceedings in state court, and Gross's benefits claim is still unresolved.

Without some prospect of compensating their attorneys along the way, ERISA litigants may face difficulty both securing counsel initially and retaining counsel as proceedings move forward. *See, e.g., Griffin v. Jim Jamison, Inc.,* 188 F.3d 996, 998 (8th Cir.1999) (noting in an ERISA case that "three lawyers had declined to represent the plaintiff before he

Gross v. Sun Life Assur. Co. of Canada, 763 F.3d 73 (2014)
58 Employee Benefits Cas. 2433
Case 1:09-cv-05290-RJS-REE Document 181-3   Filed 07/13/15   Page 7 of 12

approached his present counsel"). We see no justification for a delay that might add to that risk.

In reaching this conclusion, we recognize that addressing Gross's attorney's fee motion at this juncture could result in piecemeal fees litigation if Gross is successful before the claims administrator on remand, *see, e.g., Rote v. Titan Tire Corp.*, 611 F.3d 960, 965 (8th Cir.2010) (per curiam) (concluding that ERISA authorizes the award of fees incurred during an administrative remand when district court retains jurisdiction); *Peterson v. Continental Cas. Co.*, 282 F.3d 112, 119 (2d Cir.2002) (same), or if she is again denied benefits but succeeds in litigation challenging that adverse ruling. Although the balkanization of the fees issue may not be ideal in terms of court efficiency, the facts pertinent to fees motions covering separate phases of the case will not substantially overlap. Hence, without minimizing the burden on the district court, we decline to prioritize marginal efficiency over the possibility of better access to skilled counsel for ERISA claimants.

We therefore conclude that Gross's motion for attorney's fees is ripe for adjudication.

## II.

Having concluded that Gross is eligible for an award of attorney's fees under section 1132(g)(1), we consider whether an award is appropriate here. Although the Supreme Court in *Hardt* emphasized that the multi-factor tests traditionally used by courts to decide whether to award fees do not bear on the *eligibility* for fees under section 1132(g)(1), it allowed such inquiries as a second step to determine whether a claimant found eligible should be awarded fees. *See* 560 U.S. at 254–55 & n. 8, 130 S.Ct. 2149. We continue to find useful the five factors delineated in our precedent, *see Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 225 (1st Cir.1996); *Gray v. New Eng. Tel. & Tel. Co.*, 792 F.2d 251, 257–58 (1st Cir.1986), and, hence, we review their applicability here. *Accord* **\*83** *Temme v. Bemis Co.*, No. 14–1085, 762 F.3d 544, 549–50, 2014 WL 3843789, at \*4 (7th Cir. Aug. 6, 2014) (per curiam) (noting that five-factor test may be used to analyze whether fees should be awarded in an ERISA case); *Scarangella*, 731 F.3d at 153 n. 10, 156 (noting that district court could consider factors in exercising its discretion on whether to award fees); *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 635 (4th Cir.2010) (approving use of five-factor analysis); *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121 (9th Cir.2010) (requiring use of five-factor analysis); *McKay*, 428 Fed.Appx. at 545–46 (same).

[3] The five factors that should be considered by courts reviewing fee requests under ERISA are:

> (1) the degree of culpability or bad faith attributable to the losing party; (2) the depth of the losing party's pocket, i.e., his or her capacity to pay an award; (3) the extent (if at all) to which such an award would deter other persons acting under similar circumstances; (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions.

*Cottrill*, 100 F.3d at 225. The list is "exemplary rather than exclusive," *id.*, "and indeed, not every factor in the list must be considered in every case," *Janeiro v. Urological Surgery Prof'l Ass'n*, 457 F.3d 130, 143 (1st Cir.2006). No single factor is decisive. *Id.*

### A. Culpability or Bad Faith

Although we did not conclude in our earlier decision that Sun Life exhibited bad faith in its handling of this case, we did describe its behavior as sufficiently culpable to count this factor in Gross's favor. *See Janeiro*, 457 F.3d at 143 (stating that it is unnecessary "to find that defendants acted with an especially high degree of culpability"). As noted above, we observed in our merits decision that Sun Life may not have "made a bona fide effort to determine Gross's capabilities." *Gross*, 734 F.3d at 27.

More specifically, we observed that the reason Gross made an unusually long drive on one of the days she was videotaped—her mother's medical emergency—was "essential" knowledge for a "reliable appraisal of her medical condition." *Id.* Yet, Sun Life apparently failed to provide this important context to its independent medical consultant and at least one internal reviewer. *See id.* at 26–27 (noting that the doctor who performed the final medical assessment of Gross's claim "commented in his report that '[i]t is unclear who the claimant was seeing [at the medical building in Ashland] or why she would need to travel so far to be seen.'" (alterations in original)).[9] Further, Sun Life disregarded the independent consultant's suggestion that a reevaluation

Gross v. Sun Life Assur. Co. of Canada, 763 F.3d 73 (2014)
58 Employee Benefits Cas. 2433

Case 1:09-cv-05291-RJS Document 181-3   Filed 07/13/15   Page 8 of 12

could shed light on the seeming inconsistencies between the videotape evidence and the medical reports that Gross suffered from credible disabling pain. Sun Life's reliance on medical judgments it knew were reached with incomplete information weighs in favor of Gross's fee request. *See generally Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 115, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008) (noting that ERISA "imposes higher-than-marketplace quality standards on insurers," requiring administrators to perform their duties " 'solely in the interests of the **\*84** participants and beneficiaries' of the plan" (quoting 29 U.S.C. § 1104(a)(1))).

**B. Ability to Satisfy an Award of Attorney's Fees**
Sun Life does not assert that it is incapable of paying a fee award, but argues only that Gross has not proven that it can. Given that Sun Life is an insurance company that is not claiming financial hardship, we place this factor on Gross's side of the scale. It is of little weight, however, as "the capacity to pay, by itself, does not justify an award." *Cottrill,* 100 F.3d at 227.

**C. Deterrence**
We have noted on multiple occasions the difficulty of proving disability based on conditions, such as chronic fatigue syndrome and fibromyalgia, that do not lend themselves to diagnosis by means of objective testing. *See, e.g., Boardman v. Prudential Ins. Co. of Am.,* 337 F.3d 9, 16 n. 5 (1st Cir.2003); *Cook v. Liberty Life Assurance Co.,* 320 F.3d 11, 21 (1st Cir.2003); *see also Maher v. Mass. Gen. Hosp. Long Term Disability Plan,* 665 F.3d 289, 304 (1st Cir.2011) (Lipez, J., dissenting) ("Our court has emphasized before that in dealing with hard-to-diagnose, pain-related conditions, it is not reasonable to expect or require objective evidence supporting the beneficiary's claimed diagnosis." (citing *Boardman* and *Cook* )). That difficulty is exacerbated when plan administrators like Sun Life adopt a grudging attitude toward a claimant's self-reported symptoms.

Although a benefits administrator is entitled to probe subjective complaints of disabling pain, it must maintain an open mind when evaluating such reports. Videotapes of disability claimants going about their daily lives can be telling, but they also can be misleading. Rather than adopting a "gotcha" attitude toward seeming inconsistencies, the plan must make "a bona fide effort to determine [the claimant's] capabilities." *Gross,* 734 F.3d at 27.

Here, evenhanded treatment of Gross's substantial medical evidence, including disclosure of all pertinent information to consulting and reviewing doctors, might have led to a quicker resolution of Gross's claim—one way or the other. To be sure, Gross may bear some responsibility for our inability to resolve her benefits claim without a remand. *See Gross,* 734 F.3d at 27 (noting Gross's failure to submit a doctor's letter responding to the surveillance videos). We also are sensitive to the responsibility of administrators to the overall solvency of their plans, and their need to closely scrutinize claims to avoid fraud that could affect other participants. *See, e.g., Mote v. Aetna Life Ins. Co.,* 502 F.3d 601, 608 (7th Cir.2007) ("ERISA plan administrators have a duty to all beneficiaries and participants to investigate claims and make sure to avoid paying benefits to claimants who are not entitled to receive them." (internal quotation marks omitted)); *Barnhart v. UNUM Life Ins. Co. of Am.,* 179 F.3d 583, 589 (8th Cir.1999) ("A company failing to conduct proper inquiries into claims for benefits breaches its duty to all claimants as a fiduciary of the benefit funds when it grants claims to unqualified claimants."). Moreover, an administrator need not make the claimant's case for her, and it cannot be faulted for evidentiary gaps more appropriately filled by the claimant.

Still, plan administrators ordinarily will be in the best position to develop a record adequate for the full and fair review required by the statute, *see* 29 U.S.C. § 1133(2), and courts should not hesitate to demand "higher-than-marketplace quality standards" in the handling of claims. *Glenn,* 554 U.S. at 115, 128 S.Ct. 2343. We therefore conclude that an award of **\*85** fees to Gross may have a desirable deterrent effect by demonstrating that excessive hostility to claims involving subjective symptoms is ill-advised. All parties will be better served if ERISA fiduciaries are motivated to develop records that fairly represent all available information about a claimant's condition and capabilities.

We thus hold that the deterrence factor also weighs in favor of Gross. [10]

**D. Benefit to Others**
Although Gross pursued this litigation to secure disability benefits for herself, the success she achieved on the standard of review issue will benefit all claimants whose policies contain the "satisfactory to us" language. As described above, our ruling adopting de novo review strengthens the entitlement to benefits for employees covered by such policies. *See Herzberger,* 205 F.3d at 331. This change in

our precedent, precipitated by Gross, reflects "a growing consensus of circuit courts that require stricter clarity in plan language before insulating insurance companies from full judicial review." *Cosey v. Prudential Ins. Co. of Am.,* 735 F.3d 161, 166 (4th Cir.2013) (joining First Circuit and four others in adopting this view). Having achieved resolution in this circuit of "a significant ERISA legal question," *Bio–Med. Applications of Ky.,* 2011 WL 3568249, at *5, Gross deserves credit for providing benefit to others.

**E. Relative Merits**
Notwithstanding Gross's success in securing a remand, the relative merits of this action do not line up solely on Gross's side of the calculus. Gross has not yet established a right to benefits and, even with supplemental evidence upon remand, she may fall short of meeting her burden to prove that she is totally disabled. *See Gross,* 734 F.3d at 28 ("We take no view as to the outcome of the further proceedings to be held on remand."). Moreover, we rejected one of Gross's primary contentions—that her long-term disability policy was not part of an ERISA plan—as well as her related argument that her employer's disability plan was excluded from ERISA coverage under the regulatory "safe harbor" provision. *See Gross,* 734 F.3d at 7–11. In sum, the merits here are not one-sided, and this factor therefore does not advance Gross's motion for attorney's fees.

**F. Conclusion**
[4] We have thus determined that four of the five *Cottrill* factors weigh in favor of Gross's request for fees. Although her failure to capture the important "relative merits" factor is of some significance, that gap alone is not fatal to her fees request. Having achieved adequate success under *Hardt* to establish eligibility for fees, Gross may not be denied a fee award based solely on the fact that she did not have greater success. Even where the **\*86** relative merits of a case are in equipoise, we must inquire whether, on balance, the five factors—or any other pertinent considerations—justify an award. *See Janeiro,* 457 F.3d at 143 ("[N]o single factor is dispositive...."). We discern no facts of consequence here beyond the considerations identified in *Cottrill.* Based on our review of those factors, we conclude that Gross is entitled to an award under section 1132(g)(1).

**III.**

The parties agree that the "lodestar" method should be used to determine a reasonable fee award for Gross. *See Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps. v. Ray Haluch Gravel Co.,* 745 F.3d 1, 5 (1st Cir.2014). The lodestar is "[t]he product of the hours reasonably worked times the reasonable hourly rate(s)." *Id.* Numerous factors, identified by the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), "may support upward or downward adjustments from a lodestar." *Diaz v. Jiten Hotel Mgmt., Inc.,* 741 F.3d 170, 173 n. 2 (1st Cir.2013).

The heavily fact-dependent lodestar analysis is best performed in the first instance by the district court. We therefore remand the case for that purpose and for consideration as well of Gross's related request for costs.

*So ordered.*


SELYA, Circuit Judge (dissenting).
In this ERISA case, the plaintiff seeks attorneys' fees and costs totaling more than $262,000. The majority gives its imprimatur to an award under 29 U.S.C. § 1132(g)(1) despite the fact that the plaintiff has achieved nothing more than a purely procedural victory. This trouvaille rests on what I believe to be an erroneous conclusion: that the plaintiff has achieved some success on the merits sufficient to warrant a fee award under *Hardt v. Reliance Standard Life Insurance Co.,* 560 U.S. 242, 255, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). As a result, the rule of law for which the majority opinion will be cited is neither allowed nor adumbrated under Supreme Court precedent. I respectfully dissent.

The majority's first mistake is its conclusion that it need not answer the question left open by the *Hardt* Court: "whether a remand order, without more, constitutes some success on the merits." *Id.* at 256, 130 S.Ct. 2149 (internal quotation marks omitted). To justify this conclusion, the majority insists that our favorable decision on the standard of review bespeaks some merits success. *See ante* at 79–80. This insistence is misguided.

Conventional wisdom teaches that a picture is sometimes worth a thousand words. Here, a hypothetical serves the same purpose. Suppose the panel had agreed with the plaintiff that the standard of review should be de novo but, applying that standard, had upheld the plan administrator's decision in its entirety and denied the plaintiff relief. In such a situation,

Gross v. Sun Life Assur. Co. of Canada, 763 F.3d 73 (2014)
58 Employee Benefits Cas. 2433
Case 1:05-cv-05293-RJS-RLE Document 181-3   Filed 07/13/15   Page 10 of 12

it would be transparently clear that the plaintiff had not achieved anything resembling success on the merits. Winning the battle over the standard of review would be at most a purely procedural victory—and the Supreme Court has instructed that purely procedural victories do not count as merits success. *See Hardt,* 560 U.S. at 255, 130 S.Ct. 2149 (citing *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 688 n. 9, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)).

It defies logic to say that leaving open the ultimate fate of the plaintiff's claim, *see Gross v. Sun Life Assur. Co.,* 734 F.3d 1, 28 (1st Cir.2013), somehow transmogrifies **\*87** this procedural victory into a merits victory. Surviving to fight another day is not the same as winning the war (or even the same as winning a significant battle).

This analysis does not end the matter but, rather, tees up the real question that the plaintiff's motion poses: "whether a remand order, without more, constitutes some success on the merits." *Hardt,* 560 U.S. at 256, 130 S.Ct. 2149 (internal quotation marks omitted). The majority professes to avoid this question, but it strongly suggests an affirmative answer. *See ante* at 78 (deeming "persuasive" cases holding that a remand alone is sufficient under *Hardt* ). Beyond this generality, it asserts that the remand here may justify a fee award because it reflects "a finding that the administrative assessment of the [plaintiff's] claim was in some way deficient" and provides a "renewed opportunity to obtain benefits or compensation." *Ante* at 78. Relatedly, the majority asserts that the remand embodies our judgment that the plaintiff's claim was "sufficiently meritorious" to demand reevaluation. *Ante* at 78.

I find these assertions unconvincing. The plaintiff brought this action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, [and] to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see Gross,* 734 F.3d at 5. It follows that the merits issue in this case is whether the plaintiff is entitled to benefits (and, if so, to what extent). As long as the plaintiff secures some benefits as a result of litigation, she will be eligible for a fee award. *Cf. Ruckelshaus,* 463 U.S. at 688, 103 S.Ct. 3274 (holding that Congress's omission of a prevailing party requirement in 42 U.S.C. § 7607(f) "was meant to expand the class of parties eligible for fee awards from prevailing parties to *partially prevailing* parties" (emphasis in original)). At this point, however, the benefits claim is entirely up in the air. We simply do not know whether her claim will prove to be successful in whole, in part, or not at all.

If a claimant in such a case fails to secure any benefits, it becomes more difficult—although not impossible—to say that she has achieved some success on the merits. There may be cases in which a finding of administrative deficiency, untethered to an eventual award of benefits, can constitute success on the merits in the context of a benefits claim. But in my judgment that category of cases is limited to cases in which the claimant has vindicated a substantial right accorded to her under ERISA (say, by showing either that the defendant violated some procedural entitlement accorded by ERISA or that the defendant's decision was so arbitrary that it abridged the claimant's right under ERISA to a full and fair review).[11] *See, e.g., McKay v. Reliance Standard Life Ins. Co.,* 428 Fed.Appx. 537, 546–47 (6th Cir.2011) (affirming fee award when defendant's conduct was "arbitrary and capricious"); *Barnes v. AT & T Pension Benefit Plan–Nonbargained Program,* 963 F.Supp.2d 950, 961–63, 966 (N.D.Cal.2013) (finding fee eligibility because defendant violated ERISA notice requirements and **\*88** because claimant's suit was a catalyst for a beneficial change in the defendant's plan interpretation); *McCarthy v. Commerce Grp., Inc.,* 831 F.Supp.2d 459, 489, 493 (D.Mass.2011) (awarding fees when defendant failed "to provide even the bare-bones of ERISA's core procedural protections"); *Olds v. Ret. Plan of Int'l Paper Co.,* No. 09–0192, 2011 WL 2160264, at \*1 (S.D.Ala. June 1, 2011) (awarding fees in response to "gross violation" of regulations implementing ERISA's "full and fair review" requirement). Here, however, no such vindication has taken place; in our merits opinion, we found neither that Sun Life committed a specific ERISA violation nor that its benefits determination was arbitrary. Instead, we found only that the record was not sufficiently developed for us to "determine whether Sun Life justifiably rejected Gross's disability claim." *Gross,* 734 F.3d at 28.

The majority's emphasis on "the plaintiff's renewed opportunity to obtain benefits," *ante* at 78, is likewise inadequate to bear the weight of a fee award. In the circumstances of this case, a second bite at the apple would constitute a "meaningful benefit for the [plaintiff]," *Gastronomical Workers Union Local 610 & Metro. Hotel Ass'n Pension Fund v. Dorado Beach Hotel Corp.,* 617 F.3d 54, 66 (1st Cir.2010), only if and when it produced a favorable (or partially favorable) resolution of the benefits claim. If the claim is eventually rejected in toto, the plaintiff's second chance to make the case will have proven worthless.

Gross v. Sun Life Assur. Co. of Canada, 763 F.3d 73 (2014)
58 Employee Benefits Cas. 2433
Case 1:09-cv-05308-RJS-RLE Document 181-3 Filed 07/13/15 Page 11 of 12

The majority's thesis is not advanced by its curious suggestion that the remand reflects our judgment that the plaintiff's claim was "sufficiently meritorious" as to require reevaluation. *Ante* at 78. This strikes me as nothing more than a convoluted way of saying that a remand, without more, is sufficient to trigger an entitlement to a fee award under 29 U.S.C. § 1132(g)(1). The plaintiff's claim is either meritorious or it is not; and as the majority concedes, our merits opinion "expressly refrained from expressing any view on the ultimate merits of [the plaintiff's] claim." *Ante* at 79. Whether the plaintiff's claim is sufficiently meritorious to warrant relief remains an "open question." *Gross,* 734 F.3d at 27.

This brings us back to the pivotal question (the question that the majority says it need not answer): does a remand, without more, comprise some success on the merits sufficient to ground a fee award under 29 U.S.C. § 1132(g)(1)? This question, left open by *Hardt,* demands a nuanced answer. In some situations, a remand order alone may be enough to render a claimant eligible for fees. Those are situations in which the remand follows a finding that the plan administrator violated a substantial right accorded to the claimant under ERISA. In this case, however, there has been no such finding. Thus, all we have here is a remand alone—and a remand alone is not enough to pave the way for a fee award under 29 U.S.C. § 1132(g)(1).

I do not gainsay the majority's lament that "a remand for a second look at the merits ... is often the best outcome that a claimant can reasonably hope to achieve from the courts." *Ante* at 78. Nor do I propose that an ERISA claimant always must secure a judgment for benefits in order to qualify for fees. But if a court's order does not produce some concrete gain for the claimant, such as an award of benefits or a direct vindication of some substantial ERISA right, the claimant cannot be said to have achieved some success on the merits.

Here, the plaintiff has not yet secured (and, indeed, may never secure) some success on the merits. She is, therefore, not yet entitled to an award of fees under **\*89** 29 U.S.C. § 1132(g)(1). Put another way, a fee award at this juncture would be at best premature and at worst gratuitous. Consequently, the plaintiff's motion for fees should be denied without prejudice.[12]

Because the majority mistakenly treats the plaintiff's purely procedural victory as a badge of success sufficient to justify a fee award, I am constrained to dissent.

**All Citations**

763 F.3d 73, 58 Employee Benefits Cas. 2433

Footnotes

1   As explained in our prior decision, our acceptance in *Brigham* of "satisfactory to us" as adequate language to confer discretionary authority was not binding because of the plaintiff's procedural default and the state of the law at that time. *See Gross,* 734 F.3d at 12–13.

2   Her motion seeks $252,125 in legal fees, $5,742 for paralegal fees, and $4,459.71 in costs.

3   The Court noted the sharp contrast between the language of section 1132(g)(1), which applies to actions "by a participant, beneficiary, or fiduciary," and the language of section 1132(g)(2), which imposes a "prevailing party" requirement for an award of attorney's fees in actions to recover delinquent employer contributions to multiemployer plans. *See Hardt,* 560 U.S. at 252, 130 S.Ct. 2149.

4   The Supreme Court borrowed heavily in *Hardt* from the reasoning and language in *Ruckelshaus,* 463 U.S. 680, 103 S.Ct. 3274, "the principal case" in the line of precedents addressing statutes "that do not limit attorney's fees awards to the 'prevailing party.' " *Hardt,* 560 U.S. at 254, 130 S.Ct. 2149. That borrowing includes language quoted in the sentence to which this footnote is attached.

5   We note that many of the court decisions applying *Hardt* have been unpublished. We cite them here primarily to show the trend of decisions, not as authoritative precedent.

6   In *Hardt,* and in many of the cases cited above, the remand at issue was directly from the district court to the claims administrator. Our remand to the district court in this case, directing a remand to the claims administrator, is functionally the same for purposes of examining the plaintiff's success as if the remand had been ordered in the first instance by the district court. We therefore treat it as such.

7   The fact that we are addressing the attorney's fee issue generated by this appeal does not affect the finality of our judgment on the merits. *See Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.,* ––– U.S. ––––, 134 S.Ct. 773, 778, 187 L.Ed.2d 669 (2014) (noting that "an unresolved issue of attorney's fees generally

**Gross v. Sun Life Assur. Co. of Canada, 763 F.3d 73 (2014)**
Case 1:05-cv-03295-RJS-RLE Document 181-3 Filed 07/13/15 Page 12 of 12
58 Employee Benefits Cas. 2433

does not prevent judgment on the merits from being final"); *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 199–200, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) ("As a general matter, at least, we think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain."); *see also White v. N.H. Dep't of Emp't Sec.,* 455 U.S. 445, 451, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) (noting that a request for attorney's fees under another fee-shifting statute, 42 U.S.C. § 1988, "raises legal issues collateral to the main cause of action").

8   Other courts also have ruled on ERISA fees requests at the point at which the case has been remanded to the claims administrator. *See, e.g., McKay,* 428 Fed.Appx. at 545–46 (noting that district court awarded attorney's fees after remand, before final resolution of the case); *Bio–Med. Applications of Ky., Inc. v. Coal Exclusive Co.,* No. 08–80–ART, 2011 WL 3568249, at *1 (E.D.Ky. Aug. 15, 2011) (stating that, despite recent remand for review of plaintiff's claims, plaintiff "has nevertheless shown that it is entitled to an award of attorneys' fees at this juncture"); *Blajei v. Sedgwick Claims Mgmt. Servs., Inc.,* No. 09–13232, 2010 WL 3855239, at *5 (E.D.Mich.2010) (concluding that "it is appropriate to rule on Plaintiff's Motion for Attorney Fees even though Plaintiff has presently only secured a remand to the Plan Administrator"). Although our decision did not itself return this case to the claims administrator, we expressly directed the district court to "remand the matter to Sun Life for proceedings consistent with this opinion," 734 F.3d at 28, and we gave the court the discretion to determine only the scope of those remanded proceedings. Hence, as observed above, *see supra* note 6, the practical effect of this two-step remand order is no different from a remand that originated with the district court.

9   The record shows that Sun Life knew the reason for Gross's trip to Ashland at least by the time Sun Life requested that medical assessment in January 2008. We cannot tell whether the company also had the information before asking its independent consultant in March 2007 to review the surveillance videos.

10  Sun Life argues that it is Gross's litigation conduct, not its own actions, that should be deterred, pointing in particular to her filing of state law claims in two different federal jurisdictions. That redundancy is irrelevant to Gross's fees eligibility, which is based on her success on the merits of her ERISA claim. Moreover, under the *Hensley* analysis, *see Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), Gross will not be entitled to fees for unsuccessful claims or for excessive lawyering on successful ones. *See, e.g., Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps. v. Ray Haluch Gravel Co.,* 745 F.3d 1, 5 (1st Cir.2014) (stating that a reasonable fee excludes "those hours that are 'excessive, redundant, or otherwise unnecessary' " (quoting *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933)); *id.* (stating that "the degree of a prevailing party's success" is " 'a crucial factor' to be considered in tailoring the final award" (quoting *Hensley,* 461 U.S. at 440, 103 S.Ct. 1933)). Gross is not seeking fees for the state law litigation.

11  In *Buffonge v. Prudential Insurance Co.,* 426 F.3d 20 (1st Cir.2005), we explained that the requirement that a plan must "afford a reasonable opportunity ... for a full and fair review" of a claim denial should be understood to protect a claimant from "arbitrary or unprincipled decisionmaking." *Id.* at 30 (emphasis omitted) (discussing 29 U.S.C. § 1133(2)). Understood in this manner, the "full and fair review" requirement affords claimants some "substantive" protection, *id.,* in addition to the procedural protections provided by 29 C.F.R. § 2560.503–1(h). In our merits opinion in this case, we found no violation of either the provision's substantive or procedural components.

12  I find puzzling one portion of the majority opinion, added in an attempt to respond to this dissent. *See ante* at 80–81. In order to dispel any doubt, let me state unequivocally that I disagree with the majority's expressed thinking as to whether a remand alone may justify a fee award.

---

**End of Document**                                     © 2015 Thomson Reuters. No claim to original U.S. Government Works.